# IN THE SUPREME COURT OF IOWA

No. 06–0163

Filed May 1, 2009

**KATHRYN S. BARNHILL,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR POLK COUNTY,**

Defendant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

Attorney seeks further review after court of appeals upheld sanctions ordered against her. **WRIT ANNULLED.**

Kathryn S. Barnhill of Barnhill & Associates P.C., West Des Moines, pro se.

Wade R. Hauser III of Ahlers & Cooney, P.C., Des Moines, for defendant.

**STREIT, Justice.**

An Iowa attorney brought a class-action lawsuit on behalf of homeowners against the manufacturer of roofing shingles and its president. The action asserted seven theories of recovery, most of which were based in contract. After the district court granted summary judgment in favor of the manufacturer and its president, the president requested sanctions against the attorney who filed the class action. The president argued sanctions were appropriate because the claims against him lacked merit both in law and in fact and cost him considerable expense to defend. The district court agreed and sanctioned the attorney $25,000. The attorney filed a petition for writ of certiorari challenging the court's sanction. The court of appeals found no error and annulled the writ. Because we conclude the district court did not abuse its discretion in imposing sanctions, we agree the writ should be annulled.

## I. Facts and Prior Proceedings.

The underlying controversy in this case arose from allegations that Tamko Roofing Products, Inc. manufactured and sold defective roofing shingles that were installed on the class-action plaintiffs' homes or structures by Jerry's Homes, Inc. In 1998, Jerry's Homes, represented by attorney Kathryn Barnhill, filed suit against Tamko in the Iowa district court. The purpose of the lawsuit was to either compel Tamko to repair the roofs on over 400 houses built by Jerry's Homes or, in the alternative, recover sufficient damages for Jerry's Homes to make the repairs itself. Jerry's Homes asserted Tamko promised it would repair the damages to the shingles when problems first arose with the quality of the shingles. The case was removed to federal court based on diversity. Most of the claims were dismissed on summary judgment, including the claims for breach of express and implied warranty and fraud. A jury

returned a verdict in favor of Jerry's Homes for $1.6 million on the promissory estoppel claim, but the court granted Tamko's post-trial motion to vacate the verdict. The district court's ruling was affirmed on appeal. *See Jerry's Homes, Inc. v. Tamko Roofing Prods., Inc.,* 40 Fed. App'x 326 (8th Cir. 2002).

In March 2001, Barnhill filed a class-action lawsuit in an Iowa district court against Tamko and David Humphreys, Tamko's president and CEO. The class consisted of people who had either directly or indirectly purchased the allegedly defective shingles, including through Jerry's Homes. Jerry's Homes itself was a representative plaintiff. The petition (after four amendments) asserted the following claims against Tamko and Humphreys: (1) breach of express warranty, (2) breach of implied warranty, (3) fraudulent misrepresentation, (4) negligent misrepresentation, (5) rescission due to impermissible liquidated damages, (6) rescission due to unconscionability of express warranty, and (7) violation of a Missouri statute prohibiting unfair business practices.[1] The petition asserted Humphreys "at all times relevant hereto directed and controlled the actions of [Tamko] with respect to the allegations herein." For the most part, the allegations made no distinction between Tamko and Humphreys.

Following discovery, the plaintiffs filed a motion for class certification, and defendants filed motions for summary judgment on every allegation of plaintiffs' petition. Before ruling on the summary

---

[1]Tamko is a Missouri corporation located in Joplin, Missouri. Although the Missouri statute was not expressly pled against Humphreys, there is a reference in the petitions that Humphreys should be liable for punitive damages for violating the statute. Further, during the sanctions hearing, Barnhill admitted that she should have included Humphreys' name in the petition under that count and that she argued Humphreys violated the statute in every hearing.

judgment motions, the court certified the case as a class action against both defendants. We allowed a limited remand to permit the district court to rule on the pending motions for summary judgment. On remand, the district court dismissed six of the seven counts against Humphreys and a substantial part of the case against Tamko. In particular, the court dismissed the claims of Jerry's Homes and another plaintiff on grounds of res judicata. Fraudulent misrepresentation was the only claim remaining against Humphreys. The appeal then proceeded with the court of appeals affirming the dismissal of the six claims against Humphreys and reversing the district court's failure to grant summary judgment on the final claim of fraudulent misrepresentation. *Sharp v. Tamko Roofing Prods., Inc.,* No. 02–0728 (Iowa Ct. App. Nov. 15, 2004). At this point, all claims against Humphreys were dismissed on summary judgment. The district court subsequently granted summary judgment in favor of Tamko on the two remaining issues. The court of appeals affirmed the dismissal of these claims. *Sharp v. Tamko Roofing Prods., Inc.,* No. 05–1372 (Iowa Ct. App. Oct. 11, 2006).

During the pendency of these appeals, Humphreys filed a motion for sanctions against all of the named plaintiffs and their attorney, Barnhill, pursuant to Iowa Code section 619.19 (2001) and Iowa Rule of Civil Procedure 1.413(1). He asserted: "None of the claims pursued by plaintiffs in this case against Humphreys were well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."

The district court[2] found Barnhill violated rule 1.413 with respect to each and every claim against Humphreys, although it did not sanction her for the fraudulent misrepresentation claim. It sanctioned Barnhill and ordered her to pay Humphreys $25,000 of the nearly $150,000 he had incurred in attorneys' fees defending the case. In its order, the district court stated:

> In summary, the pleadings and other documents filed by Barnhill in this case have in general such a confusing, convoluted, self-contradictory and elusively vague, ambiguous, indirect and constantly shifting quality as to compel the conclusion that the case was made up as it went along. It is as though Barnhill said whatever needed to be said at each step to just get past the moment, whether there was a legitimate basis for saying it or not. In the process, Barnhill has violated Rule 1.413(1).

Barnhill filed a petition for writ of certiorari. We transferred the case to the court of appeals, which annulled the writ. On further review, we do so as well.

## II. Scope of Review.

We review a district court's decision on whether to impose sanctions for an abuse of discretion. *Mathias v. Glandon*, 448 N.W.2d 443, 445 (Iowa 1989). The proper means to review a district court's order imposing sanctions is by writ of certiorari. *Id.* Certiorari is a procedure to test whether a lower board, tribunal, or court exceeded its proper jurisdiction or otherwise acted illegally. Iowa R. Civ. P. 1.1401. "Relief through certiorari is strictly limited to questions of jurisdiction or illegality of the challenged acts." *French v. Iowa Dist. Ct.*, 546 N.W.2d 911, 913 (Iowa 1996). Although our review is for an abuse of discretion,

---

[2]The motions for summary judgment and the motion for sanctions against Barnhill were not before the same judge. Judge Rosenberg ruled on the summary judgment motions. Judge Staskal ruled on Humphreys' motion for sanctions and determined the appropriate sanction.

we will correct erroneous application of the law. *Weigel v. Weigel*, 467 N.W.2d 277, 280 (Iowa 1991). The district court's findings of fact, however, are binding on us if supported by substantial evidence. *Zimmermann v. Iowa Dist. Ct.*, 480 N.W.2d 70, 74 (Iowa 1992).

**III. Merits.**

**A. Rule 1.413.** The district court found Barnhill committed numerous violations of Iowa Rule of Civil Procedure 1.413. That rule states in pertinent part:

> Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation. . . . If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee.

Iowa Code section 619.19 is identical in substance.

The rule creates three duties known as the "reading, inquiry, and purpose elements." *Weigel*, 467 N.W.2d at 280. Each duty is independent of the others, and a breach of one duty is a violation of the rule. *Harris v. Iowa Dist. Ct.*, 570 N.W.2d 772, 776 (Iowa Ct. App. 1997). If a document is signed in violation of rule 1.413, the court is required to impose an appropriate sanction. *See Mathias*, 448 N.W.2d at 445 ("We are mindful the rule and statute directs the court to impose a sanction when it finds a violation.").

Compliance with the rule is determined as of the time the paper is filed. *Weigel*, 467 N.W.2d at 280. Counsel's conduct is measured by an objective, not subjective, standard of reasonableness under the circumstances. *Id.* at 281. "The test is 'reasonableness under the circumstances,' and the standard to be used is that of a reasonably competent attorney admitted to practice before the district court." *Id.* (citations omitted) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536 (9th Cir. 1986)). The reasonableness of the signer's inquiry into the facts and law depends on a number of factors, including, but not limited to: (a) the amount of time available to the signer to investigate the facts and research and analyze the relevant legal issues; (b) the complexity of the factual and legal issues in question; (c) the extent to which pre-signing investigation was feasible; (d) the extent to which pertinent facts were in the possession of the opponent or third parties or otherwise not readily available to the signer; (e) the clarity or ambiguity of existing law; (f) the plausibility of the legal positions asserted; (g) the knowledge of the signer; (h) whether the signer is an attorney or pro se litigant; (i) the extent to which counsel relied upon his or her client for the facts underlying the pleading, motion, or other paper; (j) the extent to which counsel had to rely upon his or her client for facts underlying the pleading, motion, or other paper; and (k) the resources available to devote to the inquiries. *Mathias*, 448 N.W.2d at 446–47 (citing ABA Section on Litigation, *Standard and Guidelines for Practice under Rule 11 of the Federal Rules of Civil Procedure* (1988), *reprinted in* 121 F.R.D. 101, 114 (1988)).

One of the primary goals of the rule is to maintain a high degree of professionalism in the practice of law. *Weigel*, 467 N.W.2d at 282. The rule is intended to discourage parties and counsel from filing frivolous

suits and otherwise deter misuse of pleadings, motions, or other papers. *Hearity v. Iowa Dist. Ct.*, 440 N.W.2d 860, 864 (Iowa 1989). Sanctions are meant to avoid the general cost to the judicial system in terms of wasted time and money. *Breitbach v. Christenson*, 541 N.W.2d 840, 846 (Iowa 1995). "The 'improper purpose' clause seeks to eliminate tactics that divert attention from the relevant issues, waste time, and serve to trivialize the adjudicatory process." *Hearity*, 440 N.W.2d at 866 (quoting Mark S. Cady, *Curbing Litigation Abuse and Misuse: A Judicial Approach*, 36 Drake L. Rev. 483, 499 (1987) [hereinafter Cady]). However, a party or his attorney need not act in subjective bad faith or with malice to trigger a violation. *Perkins v. Gen. Motors Corp.*, 129 F.R.D. 655, 658 (W.D. Mo. 1990). A party or his attorney cannot use ignorance of the law or legal procedure as an excuse. *Id.* The rule " 'was designed to prevent abuse caused not only by bad faith but by negligence and, to some extent, professional incompetence.' " *Id.* (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)). Moreover, because rule 1.413 is based on Federal Rule of Civil Procedure 11, we look to federal decisions applying rule 11 for guidance. *Mathias*, 448 N.W.2d at 445.

**B. Application.** With these principles in mind, we turn to the claims Barnhill asserted against Humphreys on behalf of the plaintiffs. We must determine whether the district court abused its discretion in concluding a reasonably competent Iowa attorney would not have brought these claims and that $25,000 is an appropriate sanction.

1. *Warranty claims.* Barnhill alleged Humphreys breached express and implied warranties made by Tamko. The district court found there was no reasonable basis to assert a breach-of-warranty claim against Humphreys because a corporate officer is not ordinarily liable for the contracts of the corporation. *See Bossuyt v. Osage Farmers Nat'l*

*Bank*, 360 N.W.2d 769, 778 (Iowa 1985). Barnhill never argued the court should ignore Tamko's corporate existence. *See In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000) (discussing the factors that must be proven in order to "pierc[e] the corporate veil").

Instead, she asserted these warranty claims were legitimate against Humphreys because they were based in tort rather than contract law. While it is true a corporate officer is individually liable for the torts he commits in his official capacity, *see Haupt v. Miller*, 514 N.W.2d 905, 908 (Iowa 1994), it is not true that a breach of warranty claim is founded in tort law.

Barnhill quoted from *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103 (Iowa 1995), to support her contention that a breach of warranty can be based on a tort theory:

> [C]ontract law protects a purchaser's expectation interest that the product received will be fit for its intended use. The essence of products liability law is that the plaintiff has been exposed, through a dangerous product, to a risk of injury to his person or property. As the Wisconsin Supreme Court summarized, "defects of suitability and quality are redressed through contract actions and safety hazards through tort actions."

*Tomka*, 528 N.W.2d at 107 (citations omitted) (quoting *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179, 185 (Wis. 1991)).

No reasonably competent attorney would conclude, based on this passage, that a breach of warranty can be based on a tort theory. In *Tomka*, this court was simply distinguishing warranty claims, which are based on contract, from product-liability claims, which are based on tort law. *Id.* It was not creating or implicitly accepting "tort-warranty theories" as Barnhill alleges. In fact, the very next sentence of the opinion makes clear breach-of-warranty claims are contractual claims: "We think the damage sustained by Tomka here clearly falls within

*contract-warranty theories*, not tort theories." *Id.* (emphasis added). Thus, the district court correctly concluded Barnhill violated rule 1.413 when she asserted warranty claims against Humphreys.

2. *Claims based on rescission.* Likewise, it was inappropriate for Barnhill to allege rescission claims against Humphreys, which are obviously contract claims. Notably, Barnhill did not even address the rescission claims in her brief to this court.

3. *Fraudulent misrepresentation claim.* Barnhill also pursued a claim for fraudulent misrepresentation against Humphreys. The district court did not grant Humphreys' motion for summary judgment on the issue of fraudulent misrepresentation; however, the court of appeals did.

Although the district court, in ruling on Humphreys' motion for sanctions, found "the manner in which this claim was pled against Humphreys violated rule 1.413 because Barnhill pled facts that were literally untrue," the court did not sanction Barnhill for bringing the fraudulent misrepresentation claim. As the court noted, "Humphreys would have had to defend against the fraudulent misrepresentation claim in any event," because the district court did not dismiss this claim on summary judgment.

4. *Negligent misrepresentation claim.* On behalf of the plaintiffs, Barnhill also pursued a claim of negligent misrepresentation against Humphreys. However, a negligent misrepresentation claim may only be brought against "a person in the profession or business of supplying information." *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576, 581 (Iowa 1990). The cause of action is not available against product manufacturers or product sellers who supply information about the product in connection with its sale. *Id.; accord Haupt*, 514 N.W.2d at 910. Humphreys' attorney sent Barnhill a letter in August 2001 (early in the litigation

process), advising her of the *Meier* case and urging her to dismiss the negligent misrepresentation claim as it was contrary to Iowa law.

Barnhill claimed she was justified in pursuing a negligence claim against Humphreys because Tamko maintained an in-house testing laboratory, which reported directly to Humphreys. To submit a warranty claim, Tamko customers were required to send one of their shingles to Tamko's labs for testing. Barnhill argued the lab committed negligent misrepresentation when it provided plaintiffs with lab results indicating no evidence of manufacturing defect.

There are several problems with Barnhill's argument. First, she wrongly cites *Burbach v. Radon Analytical Laboratories, Inc.*, 652 N.W.2d 135 (Iowa 2002), for the proposition that "[t]he Iowa Supreme Court has held testing laboratories are in the business of supplying information." *Burbach* had nothing to do with testing laboratories. Rather, in that case, we held a home inspection company (with a name that happened to include the word "laboratories") could be liable for negligent misrepresentation despite it not knowing who "the ultimate buyer of the property might be or when a purchase might occur." *Burbach*, 652 N.W.2d at 138. Secondly, Barnhill claimed Tamko's lab reports "were intended solely to induce reliance by customers to prevent them from filing lawsuits against Tamko." Assuming *arguendo* that statement is true, there is still no cause of action because the plaintiffs obviously did not rely on these reports to their detriment—they filed suit. *See Beeck v. Kapalis*, 302 N.W.2d 90, 97 (Iowa 1981) (stating reliance is one of the elements of negligent misrepresentation). Finally, Barnhill's argument fails because there was no evidence to suggest Humphreys personally took part in the lab reports. *See Haupt*, 514 N.W.2d at 909 (holding

"corporate officers can be held liable for negligence if they take part personally in the commission of the tort against a third party").

In sum, a reasonably competent attorney would have ascertained whether negligent misrepresentation is an available cause of action against manufacturers or product sellers (and their corporate officers) before filing suit. Thus, the district court did not abuse its discretion in ruling Barnhill violated rule 1.413 when she brought this claim against Humphreys.

5. *Claim based on a Missouri statute.* Finally, Barnhill alleged Humphreys violated Missouri's Unfair Business Practices Act. *See* Mo. Rev. Stat. § 407.020(1) (2008). Although the Act allows a private cause of action, it requires the action be brought in a Missouri circuit court. *Id.* § 407.025(1); *see Foreman v. Discount Motors, Inc.*, 629 S.W.2d 635, 637 (Mo. Ct. App. 1982) (stating when a statute " 'gives a right of action, and at the same time prescribes the means by which, or the court in which, the right is to be enforced, resort cannot be had to any other means or court than that prescribed' " (quoting *Carlisle v. Mo. Pac. Ry.*, 68 S.W. 898, 900 (Mo. 1902))).[3]

Although Barnhill argued in her appellate brief and application for further review that the Missouri statute was never pled against Humphreys, there is a reference in the petitions that Humphreys should be liable for punitive damages for violating the statute. Further, during the hearing to determine what sanctions should be imposed, Barnhill admitted she should have included Humphreys' name in the petition under that count, and she argued he violated the statute in every hearing.

---

[3]Barnhill does not contend the state of Missouri cannot define the jurisdiction of an Iowa court.

The district court found a reasonably competent attorney would have discovered through research the jurisdictional requirement and not brought such a cause of action in an Iowa district court. We agree. Therefore, Barnhill's assertion of this claim violated rule 1.413.

**C. Sanctions.** Under rule 1.413, "the court . . . shall impose upon the person who [violated this rule] an appropriate sanction, which may include an order to pay the other party . . . the amount of reasonable expenses incurred . . . including a reasonable attorney fee." We have determined the purpose of imposing monetary sanctions is to (1) deter attorneys from filing frivolous lawsuits, *Hearity*, 440 N.W.2d at 864, and (2) avoid the general cost to the judicial system in terms of wasted time and money, *Breitbach*, 541 N.W.2d at 846.

Although this case does not involve Rule 11, the federal rule is instructive in explaining the nature of sanctions: "A sanction imposed under this rule must be limited to what suffices to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Deterrence, not compensation, is the primary purpose of Rule 11 sanctions. *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990). A sanction is imposed with the hope a litigant or lawyer will " 'stop, think and investigate more carefully before serving and filing papers.' " *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398, 110 S. Ct. 2447, 2457, 110 L. Ed. 2d 359, 377 (1990) (quoting Amendments to Federal Rules of Civil Procedure, 97 F.R.D. 165, 192 (1983) (Letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules) (Mar. 9, 1982)). However, as the Sixth Circuit pointed out, "although it is clear that Rule 11 is not intended to be a compensatory mechanism in the first instance, it is equally clear that effective deterrence sometimes requires compensating the victim for attorney fees arising from abusive litigation."

*Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 400 (6th Cir. 2009). The Sixth Circuit has also concluded that *de minimis* sanctions are "simply inadequate to deter Rule 11 violations." *Id.* at 402.

With these purposes in mind, we turn to determining the appropriate amount of sanction. We have yet to establish criteria to assist the district court in determining an appropriate sanction.

The ABA has set forth the following factors a court may consider in assessing the amount of a monetary sanction:

> a. the good faith or bad faith of the offender;
>
> b. the degree of willfulness, vindictiveness, negligence or frivolousness involved in the offense;
>
> c. the knowledge, experience and expertise of the offender;
>
> d. any prior history of sanctionable conduct on the part of the offender;
>
> e. the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;
>
> f. the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;
>
> g. the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;
>
> h. the risk of chilling the specific type of litigation involved;
>
> i. the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;
>
> j. the impact of the sanction on the offended party, including the offended person's need for compensation;
>
> k. the relative magnitude of sanction necessary to achieve the goal or goals of the sanction;

l.   burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs;

m.  the degree to which the offended person attempted to mitigate any prejudice suffered by him or her;

n.   the degree to which the offended person's own behavior caused the expenses for which recovery is sought;

o.   the extent to which the offender persisted in advancing a position while on notice that the position was not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and

p.   the time of, and circumstances surrounding, any voluntary withdrawal of a pleading, motion or other paper.

ABA Section of Litigation, *Standards and Guidelines for Practice under Rule 11 of the Federal Rules of Civil Procedure* (1988), *reprinted in* 121 F.R.D. 101, 125–26 (1988).  The Fourth Circuit articulated the following four factors when determining a monetary sanction: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the . . . violation."  *Kunstler*, 914 F.2d at 523; *see also White v. Gen. Motors Corp.*, 908 F.2d 675, 684–85 (10th Cir. 1990).  We find the Fourth Circuit's considerations instructive in determining an appropriate monetary sanction for a rule 1.413 violation.  However, we also encourage district courts to consider the ABA factors as they relate to the issues identified in the four-factor test when determining an appropriate monetary sanction.

In this case, there was substantial evidence supporting a $25,000 sanction.  Not only did the district court consider all four factors listed above as well as several of the ABA considerations, but it balanced the twin purposes of compensation and deterrence set forth in our case law. *See Breitbach*, 541 N.W.2d at 846; *Hearity*, 440 N.W.2d at 864.  The

court analyzed the expenses Humphreys incurred in defending himself, the deterrence factor, and the nature and number of rule 1.413 violations. Although the district court's order imposing sanctions does not discuss Barnhill's ability to pay, at the hearing to determine the amount of sanctions, Barnhill did say, "a large sanction will put [my firm] out of business." The court heard Barnhill's statement and sanctioned her for $25,000.

In determining the amount of the sanction, the district court noted that Humphreys' itemization of his fee claim ($148,596.37[4]) was over sixteen, single-spaced pages with about 400 entries and the court file for this case (of over four years) was at least twenty-two volumes. The $25,000 sanction is reasonable given the legal and factual issues involved and the sheer number of pleadings, motions, discovery, and hearings. In total, there were six sanctionable counts asserted against Humphreys, five petitions, more than a dozen individually-named plaintiffs, eight motions for summary judgment against nine individually-named plaintiffs, a class certification appeal, limited remand procedures, and a summary judgment appeal. Even though Humphreys would have had to defend against the fraudulent misrepresentation claim (according to the district court), he still had to defend against six other claims. Humphreys' attorney had to read, research, and respond to each claim. He had to conduct and participate in discovery and file motions for summary judgment and respond when Barnhill repeatedly attacked them.

Although the court did not explain why $25,000 specifically was necessary to deter Barnhill, it did state

---

[4]Barnhill never contended that $148,596.37 was an unreasonable amount of attorney's fees.

[n]ot imposing a sanction in a case where an attorney pursues six unfounded claims along with one legitimate claim on the ground that the other party had to defend the legitimate claim anyway would reward, not deter, the filing of frivolous claims.

We believe a lesser sanction would not be sufficient "to deter repetition of such conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(4), especially in cases like this where there is a potential for a hefty settlement. *See Rentz*, 556 F.3d at 402 (determining a $2,500 sanction was not sufficient to deter where defendants incurred nearly $30,000 in attorneys' fees due to sanctionable conduct).

In addition to the sanctionable conduct, the district court was also frustrated with Barnhill's trial tactics and lack of candor and forthrightness, both of which led to the extension of the proceedings and increased legal expenses incurred by Humphreys. As the district court pointed out, "It was as though Barnhill said whatever needed to be said at each step to just get past the moment, whether there was a legitimate basis for saying it or not."[5] Further, Barnhill displayed a lack of candor on several occasions throughout this litigation. She repeatedly and vehemently represented to the court that every single plaintiff in the class action suit individually selected the specific shingles, when in fact many of her clients did not personally select the shingles. In addition, in her response to Humphreys' motion for sanctions, Barnhill asserted she never pled Humphreys violated the Missouri statute; yet Barnhill "fought

---

[5]The district court also stated:

Barnhill vigorously resisted Humphreys' counsel's attempt to have his then pending motions for summary judgment heard and decided before class certification proceedings were undertaken. Had this procedure been followed, it is likely that Humphreys would have been out of this case before he incurred the cost of the class certification proceedings. All but one of the claims against him would have been dismissed by [the judge]. . . .

tooth and nail . . . to preserve a claim that Mr. Humphreys violated that act."  The district court called her out on her actions and asked her whether she was being "honest with the court."  As we have stated,

> "A lawyer has a very special responsibility for candor and fairness in all of his dealings with a court.  Absent mutual trust and confidence between a judge and a lawyer—an officer of the court—the judicial process will be impeded and the administration of justice frustrated."

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 546 N.W.2d 215, 217–18 (Iowa 1996) (quoting *People v. Selby*, 606 P.2d 45, 47 (Colo. 1979)); *see also* Iowa Code Prof'l Responsibility DR 7–102(A)(5) (2004) ("a lawyer shall not . . . knowingly make a false statement of law or fact").

The test of an attorney's actions in zealously pursuing his or her client's interests is one of reasonableness. *Weigel*, 467 N.W.2d at 281.  In looking at all of Barnhill's efforts in pursuit of her quest, it is clear her only reason for keeping Humphreys in the litigation was to force or coerce a settlement of the litigation so Humphreys would avoid personal liability.  Although it would be fair to conclude corporate officers will pay closer attention to litigation if personal liability is at issue, it is an abuse to drag corporate officers into corporate litigation with hopes to affect their attitude and professional judgment involving corporate responsibilities and obligations.  Barnhill's lack of candor was pervasive throughout her pleadings, the motion for summary judgment proceedings, and the sanctions proceedings.

We conclude the district court's factual findings are supported by substantial evidence, and we agree with the district court's legal conclusions and application of law to the facts.  Consequently, we hold the court did not abuse its discretion in ordering Barnhill to pay $25,000 toward Humphreys' attorney fees.  Under the circumstances, a $25,000

sanction is appropriate both to deter Barnhill (and other attorneys) from similar conduct in the future and to partly compensate Humphreys for expenses incurred.

In sanctioning Barnhill, we note rule 1.413 is not meant to stifle the creativity of attorneys or deter attorneys from challenging or attempting to expand existing precedent. Our law is constantly evolving and hopefully improving because talented attorneys are willing to fight uphill battles. *See, e.g., Speight v. Walters Dev. Co.*, 744 N.W.2d 108 (Iowa 2008) (recognizing a claim of breach of implied warranty of workmanlike construction brought by subsequent purchasers against home builder); *Comes v. Microsoft Corp.,* 646 N.W.2d 440 (Iowa 2002) (recognizing a cause of action exists for all consumers, regardless of one's technical status as direct or indirect purchaser, who are injured by conduct prohibited by Iowa Competition Law).

Admittedly, there is a fine line at times between zealous advocacy and frivolous claims. Cady at 497. However, we agree with the district court and the court of appeals this line has been crossed in the present case. Our standard of review is appropriately deferential to the district court because it is in the best position to evaluate counsel's actions and motivations. In this case, the district court found that "[n]o reasonably competent attorney practicing in this court" would have pursued these claims against Humphreys. *See Andrews v. Bible*, 812 S.W.2d 284, 293 n.4 (Tenn. 1991) (noting a violation of rule 11 could stem from "inexperience, incompetence, neglect, willfulness, or deliberate choice"). It specifically found Barnhill "made up [the case] as it went along." Such conduct will not be tolerated by our judicial system.

An attorney making a good-faith challenge to existing law may still rely on notice pleading. But there comes a point in every case—usually

in response to a motion for summary judgment—when the attorney must acknowledge controlling precedent with "candor and honesty" while asserting reasons to modify or change existing law. Cady at 498. Such arguments need not be successful to avoid sanctions. *Id.* at 497. However, we will not allow an attorney to act incompetently or stubbornly persistent, contrary to the law or facts, and then later attempt to avoid sanctions by arguing he or she was merely trying to expand or reverse existing case law. Barnhill did not demonstrate to the district court she knowingly made a "good faith argument for the extension, modification, or reversal of existing law." Iowa R. Civ. P. 1.413. Consequently, the $25,000 sanction was warranted in light of the number of meritless claims asserted, the expense and time necessary to dispose of them, and most importantly, the amount necessary to deter such conduct in the future.

### IV. Conclusion.

The district court did not abuse its discretion when it sanctioned Barnhill for pursuing frivolous claims against Humphreys.

**WRIT ANNULLED.**

All justices concur except Wiggins and Hecht, JJ., who dissent and Appel and Baker, JJ., who take no part.

#63/06–0163, *Barnhill v. Iowa Dist. Ct.*

**WIGGINS, Justice (dissenting).**

I dissent. Although I agree with the majority that Barnhill's conduct is sanctionable, I disagree with the way the district court and the majority determined the amount of the sanction.

Iowa Rule of Civil Procedure 1.413(1) is patterned after Federal Rule of Civil Procedure 11, as amended in 1983. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 391–92, 110 S. Ct. 2447, 2453–54, 110 L. Ed. 2d 359, 373 (1990) (quoting Federal Rule of Civil Procedure 11 as it existed after the 1983 amendment). We look to cases interpreting the 1983 amendment to Federal Rule of Civil Procedure 11 to aid us in our interpretation of rule 1.413(1). *Weigel v. Weigel*, 467 N.W.2d 277, 279 (Iowa 1991). In *Weigel*, we relied on *Cooter & Gell* to determine the proper standard of review. *Id.* at 280.

The first error made by the majority is to say a sanction under rule 1.413 has the "twin purposes of compensation and deterrence." The cases cited by the majority do not support that proposition. *Hearity v. Iowa District Court*, 440 N.W.2d 860 (Iowa 1989), recognizes the intent of the rule is "to discourage parties and their counsel from filing frivolous lawsuits and to otherwise deter misuse of pleadings, motions, or other court papers." *Hearity*, 440 N.W.2d at 864. *Breitbach v. Christenson*, 541 N.W.2d 840 (Iowa 1995), does not say compensation is a purpose of the sanction. *Breitbach*, 541 N.W.2d at 846. *Breitbach* says a sanction is warranted because "this matter has been very costly to the opposing litigants and the judicial system in terms of wasted time and money." *Id.* Although, the court awarded the fees expended as a sanction, it did not say it made the award to compensate the party because this was not an issue in the case.

When Federal Rule of Civil Procedure 11 first was enacted, the circuits and the commentators were split on whether the purpose of a sanction was compensation or deterrence. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1334, 541–42 (3d ed. 2004) (discussing the different schools of thought as to the purpose of the rule). In 1990 the Supreme Court made it clear that the central purpose of a sanction under rule 11 is to deter baseless filings in district court. *Cooter & Gell*, 496 U.S. at 393, 110 S. Ct. at 2454, 110 L. Ed. 2d at 374. The purpose of a sanction under rule 11 or rule 1.413 is not to compensate a party for attorney fees expended.

Although rule 11 allows an award of attorney fees to the opposing party, the rule's mention of attorney fees does not create an entitlement to full compensation when an opposing party files a frivolous pleading. *White v. Gen. Motors Corp.*, 908 F.2d 675, 683–84 (10th Cir. 1990). The sanction chosen by the court should be the least severe sanction adequate to deter a party from filing frivolous pleadings. *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426–27 (1st Cir. 1992); *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990); *White*, 908 F.2d at 684–85.[6]

---

[6]In 1993, Federal Rule of Civil Procedure 11 was amended. Rule 11(c) now provides:

**(c) Sanctions.**

(1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court

The second error the majority makes is stating the district court followed the four-step test of the fourth and tenth circuits when it awarded the sanction to the defendant. The four-step test referred to by the majority is the roadmap developed by these circuits that a court should follow when awarding sanctions under rule 11 as it existed in 1983. The first step is to determine the reasonableness of the opposing party's attorney fees incurred by defending the action. *Kunstler*, 914 F.2d at 523; *White*, 908 F.2d at 684. In determining the reasonableness, only the time an attorney expends in response to actions that are sanctioned should be considered. *Bodenhamer Bldg. Corp. v.*

sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

(3) *On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) *Limitations on Monetary Sanctions.* The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(6) *Requirements for an Order.* An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

Fed. R. Civ. P. 11(c). This amendment incorporates the principle that a sanction should be the least severe sanction adequate to deter a party from filing frivolous pleadings. *Id.* r. 11(c)(4). The amendment also requires the court to explain the basis for a sanction. *Id.* r. 11(c)(6). As I point out later in this dissent, neither the district court nor the majority explained the basis for its sanction.

*Architectural Research Corp.*, 989 F.2d 213, 218 (6th Cir. 1993); *Kunstler*, 914 F.2d at 523. As my colleague, Justice Cady, noted when he was on the district court bench, "[w]hen a petition contains a mixture of frivolous and founded claims, only those expenses incurred in defending the frivolous claims may be awarded." Mark S. Cady, *Curbing Litigation Abuse and Misuse: A Judicial Approach*, 36 Drake L. Rev. 483, 506 (1986–87).

The second step is to determine a sanction that equals the minimum amount necessary to deter misconduct. *Kunstler*, 914 F.2d at 524; *White*, 908 F.2d at 684–85. A court should not use a sanction to drive an attorney out of the practice of law. *Kunstler*, 914 F.2d at 524. Decisions as to whether an attorney should be practicing are better left to our attorney discipline process. The amount of sanction is appropriate only " 'when it is the *minimum* that will serve to *adequately* deter the undesirable behavior.' " *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (quoting *Eastway Constr. Corp. v. City of New York*, 637 F. Supp. 558, 565 (E.D.N.Y. 1986) (emphasis added)).

The third step is to determine the ability of the sanctioned party to pay. Rule 11 sanctions are analogous to punitive damages because of their deterrent purpose. *Kunstler*, 914 F.2d at 524. It should be the sanctioned party's burden to show ability or inability to pay. *Id.*

The last step is to consider other factors, such as the ABA standards set forth by the majority in its opinion. *Id.* at 524–25; *White*, 908 F.2d at 685. I believe these four steps should be followed by a court when it awards sanctions under rule 1.413(1).

An examination of the district court's thought process in awarding the sanction reveals it failed to follow any of these steps when it awarded

the sanction. The district court acknowledged "Humphreys would have had to defend against the fraudulent misrepresentation claim in any event," but failed to determine the amount of fees actually expended by the defendant in defending the sanctionable claims. This is contrary to the first step in assessing a sanction.

The majority makes the same error by not determining what fees are attributable to the sanctioned conduct. How much time could the defendant have expended getting claims such as negligent misrepresentation dismissed? I say not much. The court should have requested the defendant to produce records of time and expenses spent only attributable to the sanctioned conduct. Upon the filing of an affidavit setting forth the party's time and expenses the court could review such an affidavit, as is done in any other case, to determine a fair and reasonable fee for the sanctioned conduct.

The district court and the majority do not apply steps two and three. The district court acknowledged in its ruling that the sanctioned party stated she did not have the ability to pay a large sanction. However, the district court and the majority fail to make any finding regarding her ability to pay. Furthermore, both the district court and the majority use sanctions as a fee-shifting device rather than as a deterrent.

Finally, the district court did not consider other factors in meting out its sanction. The majority and the district court narrowly focus on what sanction is needed to compensate rather than apply the four-step test. The majority's failure to apply the four-step test and scrutinize the district court's award of the sanction gives the district court unlimited power to craft a sanction without giving any explanation as to how it arrived at the amount. As one court aptly noted,

because "Rule 11 sanctions have significant impact beyond the merits of the individual case" and can affect the reputation and creativity of counsel, the abuse of discretion standard does not mean we give complete deference to the district court's decision.

*Bilharz v. First Interstate Bank of Wis.*, 98 F.3d 985, 989 (7th Cir. 1996) (quoting *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994)).

Under the majority's analysis, this court will never have a basis to overturn a district court's award of sanctions. The factors used by the majority coupled with its nonexistent abuse of discretion standard can be used to support any award of sanctions.

It is standard practice for defendants to raise a myriad of defenses in their answers to petitions. These defenses include failure to state a cause of action, statute of limitation defenses, laches, estoppels, comparative fault, assumption of the risk, failure to mitigate damages, unreasonable failure to avoid injury, or misuse. Many times defendants raise these defenses without factual support. If we abide by the majority's analysis in its review of the district court, the attorneys that raise these defenses without support should be sanctioned, and that sanction would be unreviewable.

I suspect when a party requests sanctions this court will not overturn a substantial award of sanctions if the nonsanctioned party can submit records justifying the work it did in pursuing its claim. I say this because the award of the sanction approved by the majority has no relationship to the time actually spent by the defendant in dealing with the sanctioned conduct. If it takes $25,000 to deter a solo practitioner from filing frivolous claims, then is $150,000 enough to deter a fifty-person law firm from filing frivolous claims?

Therefore, I would find the district court abused its discretion by: (1) not determining the time spent by the defendant to defend against the sanctioned activity; (2) not determining the minimum amount needed to deter the conduct; (3) not determining the ability of the sanctioned party to pay; and (4) not considering other factors as set forth in the ABA standards. I would sustain the writ and remand the case to the district court to determine the proper sanction in light of the test I have set forth in this dissent. Maybe the sanction is too low, too high, or just right. However, without a principled analysis by the district court supported by substantial evidence, I can only conclude it abused its discretion in making this award. *See State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005) (holding a court abuses its discretion when it bases its decision on untenable grounds or it acts unreasonably. A ground or reason is untenable when it is based on an erroneous application of law or when it is not supported by substantial evidence.).

Hecht, J., joins this dissent.