# IN THE COURT OF APPEALS OF IOWA

No. 21-1390
Filed June 29, 2022

**DUTTON, DANIELS, HINES, KALKHOFF, COOK and SWANSON, P.L.C.,**
    Plaintiff,

**vs.**

**IOWA DISTRICT COURT FOR BLACK HAWK COUNTY,**
    Defendant.
_____

Certiorari to the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

A law firm seeks certiorari review of a district court ruling imposing monetary sanctions. **WRIT SUSTAINED AND CASE REMANDED.**

David J. Dutton and Joshua M. Moon of Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson, P.L.C., Waterloo, and David L. Brown of Hansen, McClintock & Riley, Des Moines, for plaintiff.

Peter R. Lapointe, Kevin J. Driscoll, and Andrew T. Patton of Finley Law Firm, P.C., Des Moines, for defendant.

Considered by May, P.J., and Schumacher and Badding, JJ.

**MAY, Presiding Judge.**

Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson, P.L.C. (law firm) seeks certiorari review of a district court order imposing monetary sanctions. We find the district court did not abuse its discretion in concluding a sanction was appropriate. But we do not agree with all of the grounds on which the district court based its decision to sanction. So we remand with instructions to reconsider the amount of the sanction.

**I. Background Facts and Prior Proceedings**

This case arises from the law firm's representation of Tracy Even. Even always had an interest in the mini-storage business. So he kept an eye on a property near his house that he thought would be a good location to build storage units. On June 16, 2017, Even entered a purchase agreement to buy the property for $68,000. The purchase agreement said Even was buying the property "SUBJECT . . . TO EXISTING EASEMENTS, IF ANY." The agreement also said that

> [a]t the time of the final payment hereunder, the [s]eller shall convey the premises to the [b]uyer by warranty deed and shall furnish the [b]uyer an abstract of title . . . . Within a reasonable time after the execution of this agreement, such abstract . . . shall be submitted to the [b]uyer for examination. Buyer or [b]uyer's attorney shall either approve the title or point out specific objections. After all valid objections have been satisfied or provided for, [s]eller shall have no obligation to pay for further abstracting excepting any made necessary by his own affairs.

Two days later, on June 18, the sellers signed the purchase agreement. The sellers then contacted Title Services Company, Inc. (TSC). The sellers asked TSC to prepare an updated abstract for the property and send it to attorney Eric

Johnson. Johnson was representing Even for purposes of the purchase of the property.[1]

Johnson received TSC's abstract on June 28. The abstract showed no easements on the property. Johnson then prepared a title opinion based on TSC's abstract. Like the abstract, Johnson's title opinion showed there were no easements on the property. Johnson provided the title opinion to Even on June 28.

A couple weeks later, the sale closed. On July 13, Even paid the agreed-upon purchase price of $68,000. On July 14, the sellers conveyed the property to Even and his wife.

On August 22—more than a month after the sale closed—Even formed All Purpose Storage, LLC (APS) for the purpose of operating a mini-storage business on the property. The certificate of organization identified Even as the only initial member of APS.

As Even prepared to begin building the mini-storage units, he discovered that there was a sewer easement on the property. This was confirmed in a May 2018 letter from Black Hawk County Abstract & Title. The letter explained that the sewer easement—which had not been identified in TSC's abstract—was granted in 1980.

Even after he learned of the easement, though, Even did not consider selling the property and building elsewhere because he still liked the location.

---

[1] To be clear: Johnson was not affiliated with the law firm at issue in this case.

Instead, Even began construction of storage units on the property. The first units were constructed in the late summer and early fall of 2018.

That October, Even and his spouse transferred the property to APS via quitclaim deed. APS leases the storage units to tenants.

In December 2019, Even brought a negligence suit against TSC based on its failure to identify the easement in its abstract. The law firm at issue in this case represented Even in his negligence suit against TSC. Two of the law firm's members were named on Even's petition and his subsequent filings. One of the law firm's members signed Even's petition. The first paragraph of the petition stated that Even "is the owner of" the property. The petition requested "compensatory damages for the loss of the use of his property."

On or about January 9, 2020, the petition was served on TSC. On February 14, TSC's counsel emailed a letter to the law firm. The letter warned that Even's petition "violates the provisions of Iowa Rule of Civil Procedure 1.413(1) because," among other things, "it is not well grounded in fact." As one particular, the letter noted, "Tracy Even is not the owner of the property, but instead the current owner is All Purpose Storage, LLC."

On February 17, TSC filed its answer. On February 18, Even filed a "Motion for Joinder of Party Plaintiff." The motion asked permission to join "All Purpose Storage, LLC" as a plaintiff. The motion explained: "Tracy Even and wife Anne are the owners of All Purpose Storage, LLC and have an interest in the action against the Defendant." On February 19, the court entered an order granting the motion. No amended petition was filed.

On November 10, TSC's counsel took Even's deposition.  For reasons that will be explained, the following excerpt from Even's testimony is significant here:

> Q. Let me ask you this: If you'd have known about the easement before you bought it, would you still have bought it anyway?  A. Circumstances would have had to change.
> Q. Tell me what you mean by that.  A. Prices.
> Q. Which prices?  Price of the property?  A. Yes.
> Q. I don't want to put words in your mouth.  You tell me what you mean by that.  A. I would have never paid 68,000 for it.
> Q. You would have paid less.  A. Yes.
> Q. And so lawyers like to summarize.  If you knew there was an easement before you bought it, you still would have been interested in buying it but not for what they were asking.  A. Yes.
> Q. Because this was the desired location and the part of town that you thought was best suited for what you wanted to do with the mini-storage units.  A. Yes.
> . . . .
> Q. Mr. Even, we were talking earlier about the fact that you would have still bought the property even if you knew of the easement, but you wouldn't have paid what you did for it.  Do you have in mind what you would have been willing to pay if you knew the easement was there?  A. No, I don't.  I would have obviously sat down with my wife and discussed it.

In December, the law firm designated experts on behalf of Even and APS.  One of those experts was Steven Duggan, a certified public accountant.  Duggan provided the law firm with a report dated February 16, 2021.  It began by stating: "We have been retained by your firm as an expert witness on behalf of plaintiff Tracy Even . . . .  In my role as expert witness, I have been asked to provide an estimate of the lost revenue suffered by the plaintiff as a result of the alleged negligence of the defendant."  More specifically, Duggan had calculated the profits that could have been reaped by renting additional storage units that could have been built on the property if the sewer easement didn't exist.  All told, the report stated, "[t]he total estimated present value of the plaintiff's loss is $476,077 over a 39-year period."

On February 19, TSC moved for summary judgment. Among other things, TSC argued that—because Even did not own the property—Even could not recover lost profits from inability to use the property. TSC also noted that, in his deposition, Even "admit[ted] he would have purchased the [p]roperty, even if he were aware of the [e]asement."

On March 8, the law firm filed a resistance to TSC's summary judgment motion. In support of the resistance, the law firm filed Duggan's report. In its brief, the law firm claimed Duggan's report was a calculation of *Even*'s damages. The law firm argued that Even's transfer of the property to APS did not prevent him from recovering those damages because "Even is entitled to receive distributions" from APS, which the law firm referred to as "his LLC."

On May 11, the district court entered an order granting TSC's motion. On May 25, plaintiffs filed a notice of appeal. That appeal is addressed in a separate opinion that will be filed today. *See Even v. Title Services Corp.*, No. 21-0727, 2022 WL _____ (Iowa Ct. App. June 29, 2022).

On June 14, TSC filed a motion for attorney fees and expenses. TSC alleged that several of the law firm's filings had violated Iowa Rule of Civil Procedure 1.413(1). Among other things, TSC noted (1) the petition improperly identified Even as the owner of the property; (2) Duggan's report improperly identified Even as the owner of the property; and (3) plaintiffs' summary judgment resistance both improperly claimed "Even could recover lost profits as a member of" APS and improperly claimed Even could establish causation even after "Even testified he would have purchased the property even if he had known of the easement."

The law firm filed a resistance to TSC's motion. They claimed no violations had occurred and, in any event, TSC's motion was untimely.

On September 1, the district court entered an order on TSC's motion. The court found the motion was timely. The court also found that the law firm violated rule 1.413 by (1) filing the petition; (2) resisting TSC's summary judgment motion; and (3) as one particular, filing Duggan's report in support of the resistance to TSC's summary judgment motion. Here are some of the court's findings concerning the petition:

> Defendant alleges that plaintiffs' petition was not well grounded in fact because it stated that Mr. Even owned the property in question, when in fact, [APS] owned it. Had plaintiffs' attorneys conducted even slight inquiry they would have known that Mr. Even did not own the property. As the first filing party, plaintiffs' attorneys had plenty of time and ability to inquire, the issue of legal ownership is not complex, the information was known by Mr. Even, the property had been owned by [APS] for two years before the filing, and even if Mr. Even poorly described the property's ownership, plaintiffs' attorneys needed not rely solely on Mr. Even for this information. Therefore, the petition was, at least partially, not well grounded in fact.

The court also found that—in light of Even's deposition testimony as to how he would have proceeded if he had known of the easement before purchasing the property—the law firm violated rule 1.413 by filing Duggan's report in resistance to summary judgment. Here are some of the court's relevant findings:

> [C]ertifying a document that states Mr. Even *himself* has a plausible negligence claim, after the depositions were taken in which Mr. Even admits he would have purchased the property even if he'd known about the easement, is not well grounded in law, nor does it make a good faith argument for the extension, modification, or reversal of existing law. Therefore, certifying this expert report was not an act well grounded in existing law, and as such violates rule 1.413.

Along similar lines, the court also found plaintiffs' summary judgment resistance violated rule 1.413 by asserting that Even had a plausible claim that TSC's negligence caused damage to Even. The court explained:

> Defendant states that there is no viable legal argument on causation because Mr. Even admitted in his deposition that he would have purchased the property even if he had known about the easement. In the order granting summary judgment, the court stated that it is clear that defendant's negligence in failing to find or disclose the easement was not the cause of plaintiffs' damages because of Mr. Even's admission.
>
> While claims against abstractors for similar omissions have been recognized by Iowa courts, it has shown essential that the plaintiff reasonably relied on the abstract.
>
> Although Mr. Even states he relied on the abstract, it does not follow that he did so. Plaintiffs' claim is that the absence of the easement on the abstract caused damages, however Mr. Even's admission that he would have bought it anyway logically shows that if the abstract *had* shown the easement, it would not have changed the outcome. Because violations of rule 1.413 are judged at the time of filing, anything plaintiffs filed after the deposition of Mr. Even that asserted a claim that defendant acted negligently with respect to Mr. Even himself was not well grounded in basic negligence law. Therefore, plaintiffs' resistance, and the certification of Mr. Duggan's report, are violations of [rule] 1.413.

(Internal citations omitted.)

The court also found that plaintiffs' summary judgment resistance violated rule 1.413 by asserting that—although Even had transferred the property to APS— Even could still recover lost profits. The court explained:

> Defendant claims there is no viable legal argument that Mr. Even is eligible to recover lost profits pursuant to his being a member of [APS]. Plaintiffs state that, as a member of the corporation, Mr. Even is entitled to receive distributions; therefore, he should be entitled to recover lost profits even though he does not own the property. The motion for summary judgment noted that where an individual conveys their entire interest in a real estate parcel to an LLC in which it is a member it does not retain any rights in that property. Therefore, Mr. Even cannot claim lost profits based on inability to use the property that he does not own or lease.

Additionally, while an LLC *may* distribute profits to its members, it is not obligated to do so.  Any profits, for example, may be fully reinvested into the LLC.  Simply because Mr. Even may be highly likely, as a managing member of the LLC, to distribute profits to himself, does not mean he is "entitled" to said expected profits.  Plaintiffs do not argue that they are pursuing an extension or modification of partnership law in asserting this claim.  It seems that through reasonable inquiry plaintiffs would have chosen not to pursue this argument because it is not well grounded in existing law, and as such, violates rule 1.413.

The court summarized its findings as follows:

In reviewing the reading, inquiry, and purpose duties, the plaintiffs have violated rule 1.413 by filing their petition with a basic and relevant factual inaccuracy, certifying and filing the Mr. Duggan's expert report, which states Mr. Even himself, has a plausible negligence claim, and by including in their [summary judgment] resistance a claim that Mr. Even himself had a plausible negligence claim.  Having concluded that plaintiffs' attorneys violated rule 1.413, sanctions must be imposed.  Iowa R. Civ. P. 1.413.

Next the court considered what specific sanction would be appropriate.  After a detailed analysis, the court concluded the law firm should be sanctioned $10,000.

The law firm then filed a petition for certiorari review.  Our supreme court granted the writ and transferred the case to our court.

**II. Standard of Review**

"We review a district court's decision on whether to impose sanctions for an abuse of discretion."  *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009).  Even so, "we will correct erroneous application of the law."  *Id.*  "The district court's findings of fact, however, are binding on us if supported by substantial evidence."  *Id.*

**III. Merits.**

**A. Was the motion for sanctions timely?**

We begin by considering the law firm's argument that TSC's motion for sanctions was untimely. The text of rule 1.413 contains no deadline for filing sanctions motions. But our supreme court has said "such motions must be filed expeditiously without undue delay." *Hearity v. Bd. of Sup'rs For Fayette Cnty.*, 437 N.W.2d 907, 909 (Iowa 1989). Applying this standard here, we think TSC's motion was timely as to its allegations that the law firm violated rule 1.413 through its summary judgment resistance. The district court granted summary judgment on May 11, 2021. TSC filed its sanctions motion on June 14, roughly a month later. We think this timing qualifies as "expeditious" and "without undue delay." *See id.*

We reach a different result as to defendant's allegations about the petition. The petition was served on or about January 9, 2020. In February, TSC sent the law firm a letter explaining why the petition violated rule 1.413. The letter specifically identified the very same flaw in the petition that the district court would ultimately find sanctionable, namely, the petition's false claim that Even owned the property. But TSC waited until June 2021 to seek sanctions on this basis. TSC does not offer any good reason for this sixteen-month delay. So, with regard to defects in the petition, we do not think TSC's timing qualifies as "expeditious" and "without undue delay." *See id.*

Of course, when there is room for uncertainty as to whether a petition's allegations are false, we would not expect an immediate motion for sanctions. We usually wouldn't expect such a motion "until after the completion of discovery." *Darrah v. Des Moines Gen. Hosp.*, 436 N.W.2d 53, 54 (Iowa 1989). "Even then,

the violation may not be readily apparent until a later stage of the proceedings." *Id.* In this case, though, TSC immediately *knew* that the petition included a *verifiably* false claim, namely, the claim that Even owned the property. TSC had no reason to wait for discovery or other proceedings before bringing this false claim to the court's attention.

We conclude, therefore, that the June 2021 motion was untimely as to any violations in the petition. Accordingly, we conclude no sanction should be based on the petition. We reverse the district court's contrary finding.

**B. Did the summary judgment resistance violate rule 1.413?**

We next consider whether the district court abused its discretion by sanctioning the law firm based on its summary judgment resistance and accompanying documents, including Duggan's report. We believe this issue breaks down into two questions:

1. Did the district court abuse its discretion by concluding the law firm violated rule 1.413 by asserting Even still had a viable negligence claim against TSC after Even testified in his deposition that—as the district court paraphrased—"he would have purchased the property even if he had known about the easement," which is to say, even if TSC had not negligently failed to disclose the easement's existence?

2. Did the district court abuse its discretion by concluding the law firm violated rule 1.413 by asserting Even could recover lost profits from use of the property even though Even did not own the property because Even had transferred the property to APS?

We address these questions in turn. But first we review rule 1.413. It states in pertinent part:

> Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . . . If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee.

Iowa R. Civ. P. 1.413(1).

The issue here is whether the law firm made filings that were—in the words of the rule—not "well grounded in fact" or not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *See id.* When considering this issue, we recall our supreme court's guidance that:

> The rule is intended to discourage parties and counsel from filing frivolous suits and otherwise deter misuse of pleadings, motions, or other papers. Sanctions are meant to avoid the general cost to the judicial system in terms of wasted time and money. . . . [A] party or his attorney need not act in subjective bad faith or with malice to trigger a violation. A party or his attorney cannot use ignorance of the law or legal procedure as an excuse. The rule "'was designed to prevent abuse caused not only by bad faith but by negligence and, to some extent, professional incompetence.'"

*Barnhill*, 765 N.W.2d at 273 (internal citations omitted).

With these concepts in mind, we consider whether the law firm violated rule 1.413 by continuing to assert Even had a viable negligence claim against TSC after Even testified in his deposition that—as the district court paraphrased—"he would have purchased the property even if he had known about the easement,"

which is to say, even if TSC had not negligently failed to disclose the easement's existence. For two reasons, we conclude there was no violation. First, because we are considering the law firm's resistance to a summary judgment motion, we must certainly view Even's testimony in the light most favorable to Even and, therefore, to the law firm. And viewing Even's testimony in that most-favorable light, we agree with the law firm that Even made no unconditional commitment to purchase the property. Here, again, is the testimony in question:

> Q. Let me ask you this: If you'd have known about the easement before you bought it, would you still have bought it anyway? A. Circumstances would have had to change.
> Q. Tell me what you mean by that. A. Prices.
> Q. Which prices? Price of the property? A. Yes.
> Q. I don't want to put words in your mouth. You tell me what you mean by that. A. I would have never paid 68,000 for it.
> Q. You would have paid less. A. Yes.
> Q. And so lawyers like to summarize. If you knew there was an easement before you bought it, you still would have been interested in buying it but not for what they were asking. A. Yes.
> Q. Because this was the desired location and the part of town that you thought was best suited for what you wanted to do with the mini-storage units. A. Yes.
> . . . .
> Q. Mr. Even, we were talking earlier about the fact that you would have still bought the property even if you knew of the easement, but you wouldn't have paid what you did for it. Do you have in mind what you would have been willing to pay if you knew the easement was there? A. No, I don't. I would have obviously sat down with my wife and discussed it.

Certainly, Even admitted he would have still be "interested in buying" the property even if he had known of the easement. But his interest in buying the property was explicitly *conditional.* It was conditioned on the occurrence of two events: (1) the seller accepting a price less than $68,000; and (2) Even deciding (after discussing with his wife) that the seller's (hypothetical) reduced price was acceptable. And the record gives no reason to believe that either of those events

would have occurred.  So we cannot say that Even's testimony showed he *actually* "would have purchased the property even if he had known about the easement," as the district court found.

We also agree with the law firm that—notwithstanding Even's testimony—it was not frivolous for Even and the law firm to pursue a claim for lost opportunity. By "lost opportunity," we refer to Even's theory that—because Even wasn't informed of the easement before he paid $68,000 for the property—Even lost the opportunity to renegotiate with the seller and (perhaps) obtain the property for less. Indeed, in its summary judgment ruling, the district court acknowledged that—if Even's lost-opportunity theory had been supported by sufficient evidence—it would have been appropriate to allow "the jury to determine how likely he would be able to renegotiate the contract and how much, if successfully, he would have benefited from it."  Of course, the district court ultimately found this claim couldn't be submitted to a jury because there was insufficient supporting evidence as to "the likelihood of being successful at renegotiation," "what amount he could have gained out of the renegotiation," and so on.[2]  But this failure of evidence does not mean that the law firm's pursuit of the lost-opportunity theory was frivolous and, therefore, sanctionable.

All things considered, then, we do not believe Even's deposition testimony was so damaging as to leave no reasonable possibility of a negligence claim.  So his testimony did not require the law firm to cease advancing negligence claims or

---

[2] On appeal, we affirmed this finding.

to permit the entry of summary judgment. We reject the district court's contrary finding.

We turn next to the district court's finding that the law firm violated rule 1.413 by asserting Even could recover lost profits from use of the property even though Even doesn't own the property. Rather, APS owns the property. And it is APS who operates storage units built on the property. So, if a party is losing out on profits that could have been reaped from operating more storage units on APS's property, it is APS—not Even.

In response, the law firm focuses on the Duggan report. Here are some relevant excerpts from the law firm's brief:

> Mr. Even and APS's economic expert's report did not separate or otherwise distinguish Mr. Even's loss from APS's loss. The report calculated the lost revenue due to the inability to use the portion of the land subject to the sewer easement. Accordingly, any loss sustained by Mr. Even, personally, is derived from the overall loss calculated in the report. That is, there is no duplication of lost profit damages calculated based on Mr. Even and APS being separate parties to the lawsuit.
> . . . That is, "removing" Mr. Even's personal damages would have done nothing to change the calculations made in the economist's report.

(Internal record citation omitted.) We think this misses the district court's point. The district court did not sanction the law firm on the theory that they had duplicated or otherwise inflated *the amount* of profits that had been lost. Rather, the district court sanctioned the law firm because the law firm improperly asserted that *Even* was personally entitled to *any* lost profits.

The law firm also mentions that the district court "even acknowledge[d] that it may have been highly likely that Mr. Even, as the owner of APS, would have received distributions from the profits of the company." As the district court

understood, however, that does not mean *Even* could sue TSC to recover profits that *APS* allegedly lost. The contrary idea—that an LLC's members can treat the LLC's rights *as their own* by bringing suits *in their own names* to recover money to which *the LLC* is entitled—is not reconcilable with Iowa law, which treats LLCs and their members as separate entities.[3] *See* Iowa Code § 489.104(1) ("A limited liability company is an entity distinct from its members."); 5 Matthew G. Dore, *Iowa Practice Series: Business Organizations* § 13:5 (Nov. 2021 update) (noting "that the limited liability company is not simply an association of members, but rather 'is an entity distinct from its members,'" and further noting that "[a] limited liability company is thus a legal person that can own property and conduct business apart from its members" (footnote citations omitted)). The law firm does not cite—and we have not found—any authority that would permit such suits. Nor does the law firm advance any "good faith argument for the extension, modification, or reversal of existing law" that would permit such suits. *See* Iowa R. Civ. P. 1.413(1).

So we agree with the district court that the law firm violated rule 1.413 by asserting that Even could recover an LLC's alleged lost profits. And so we also conclude that sanctions in some amount were appropriate. As explained, however, we have concluded that other conduct on which the district court based its original sanction award was not sanctionable. Therefore, we believe the amount of the sanction should be revisited.

---

[3] Indeed, the separateness of LLCs—which insulates their members from the LLC's "debts, obligations or other liabilities . . . whether arising in contract, tort, or otherwise"—is one reason that LLCs are popular. Iowa Code § 489.304(1) (2021).

Accordingly, we reverse the district court's original award of sanctions. On remand, the court should determine an appropriate sanction based solely on the law firm's assertion that Even could recover lost profits.

> In determining the proper sanction, the district court should make specific findings as to "'(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the . . . violation.'" In weighing the severity of the violation, the district court should consider the American Bar Association factors we set forth in the *Barnhill* decision. [765 N.W.2d] at 276–77.

*Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 495–96 (Iowa 2009).

**WRIT SUSTAINED AND CASE REMANDED.**