# IN THE COURT OF APPEALS OF IOWA

No. 13-0814
Filed October 15, 2014

**ALEX CRABB,**
    Plaintiff-Appellant,

**vs.**

**IOWA DISTRICT COURT IN AND FOR POLK COUNTY,**
    Defendant-Appellee.
_____

Certiorari to the Iowa District Court for Polk County, Mary Pat Gunderson, Judge.

An attorney challenges the district court's ruling sanctioning him for representations in court filing. **WRIT ANNULLED.**

Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for appellant.

Debra Ann Hockett-Clark, West Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Tabor, JJ. McDonald, J., takes no part.

**VAITHESWARAN, P.J.**

We are asked to decide whether a district court abused its discretion in sanctioning Alex Crabb, an attorney, for making misleading statements in a court filing.

## I.    *Background Facts and Proceedings*

The facts underlying the sanctions ruling are lengthy but straightforward. Troy Dowell pled guilty to several crimes, including neglect of a dependent. The sentencing court ordered his imprisonment and restrained him from having any contact with his three children. At sentencing, Dowell "signed off" on the criminal no contact order, which was to remain in effect until July 15, 2013.

Following Dowell's imprisonment, his wife, Charity, petitioned for a dissolution of the marriage. She sought and obtained a decree granting her request for sole custody and physical care of the children. Charity and her children subsequently moved to Australia.

In the ensuing years, Dowell filed several documents contesting the criminal no contact order and dissolution decree. Those documents bear on Crabb's knowledge or presumed knowledge of facts precipitating the sanctions order.

Dowell first moved to modify or terminate the no contact order. He alleged Charity was to obtain counseling for the children and, once the counselor found it appropriate, he would be allowed to at least have telephone and written contact with the children. He also asserted the Department of Human Services was ready to approve contact. Following a contested hearing, the district court denied the motion, finding an absence of support for any of Dowell's claims.

Dowell next petitioned to vacate the dissolution decree and obtained permission to have the petition served on Charity by publication. Charity did not see the published notice and did not file a responsive pleading. The district court entered a default order vacating certain portions of the dissolution decree including "legal and physical custody of the minor children." The order stated the parties were "placed back in the position they were in prior to the entry of the decree." Charity did not receive a copy of the order at the time of its filing.

Dowell then moved for an order to have the children returned to Iowa. The district court found an absence of facts alleging the children were in danger and noted Dowell was still incarcerated and in no position to assume custody of the children. The court denied the motion.

Meanwhile, Dowell's parents, who had previously reported the children missing, learned they were at the Los Angeles airport getting ready to board a flight to Australia with their mother. Dowell's parents enlisted the assistance of attorney Crabb to file an application for rule to show cause as to why Charity should not be held in contempt. The application, filed in the name of Dowell, alleged in pertinent part:

> 10. The Petitioner has wrongfully withheld visitation or any contact between the children and [Dowell] and has withheld any information regarding the whereabouts of the minor children.

The application further alleged:

> 13. The U.S. State Department requested the Court enter a temporary Order by a Court in Iowa confirming that the Petitioner is unlawfully withholding the children from the Respondent pursuant to the Order Vacating Judgment, and that the Petitioner and children not be allowed to leave the country until complying with the Order to Vacate instructing Petitioner that custody must be re-litigated.

The application sought an order

> prohibiting the Petitioner from removing the children from the United States, an Order commanding the Petitioner to appear and answer the allegations of this Application, an Order commanding the U.S. State Department and local authorities to prevent the Petitioner from taking the children out of the United States and for such other and further relief as the Court deems just and equitable in the premises.

Although the application contained a Polk County caption, Crabb obtained an ex parte order in Warren County setting the matter for hearing in Polk County and "commanding the U.S. State Department and local authorities to prevent [Charity] from taking the children out of the country until [Charity] has appeared and answered to the allegations of this Petition." Authorities served the order at the airport and prevented Charity and the children from boarding the plane.

Charity retained an Iowa lawyer, who sought an expedited hearing on the contempt application. The parties informally resolved the underlying issues and Crabb dismissed the application.

This did not end the matter. On its own motion, the district court scheduled a hearing to determine the appropriateness of sanctions against Crabb. The scheduling order stated: "Pursuant to Iowa Rule of Civil Procedure 1.413 the Court orders the attorneys for the parties to appear in Courtroom 412 of the Polk County Courthouse on April 3, 2013 at 10:30 a.m." The order was issued two months before the hearing date.

At the hearing, the court articulated "a number of concerns" relating to the application for rule to show cause and afforded Crabb an opportunity to explain the filing. Following the hearing, the court concluded Crabb violated rule 1.413 "by knowingly making false and misleading statements to the Court in the

Application and in certifying by his signature that he had made a reasonable pre-filing inquiry into the facts when he had not." The court focused on Crabb's paragraph ten assertion that Charity "wrongfully" and "unlawfully" withheld visitation and contact between Dowell and the children "when in fact there was a valid criminal no contact order in place at that time." The court cited Crabb's conceded knowledge of the no contact order at the time he filed the application. The court also relied on Crabb's paragraph thirteen allegation that the U.S. State Department requested an Iowa court order confirming Charity's unlawful withholding of the children. The court cited Crabb's admission to the absence of "proof of any such request" and his failure to verify the accuracy of the statement. The court ordered Crabb to pay a sanction of $9684.05 covering Charity's expenses and attorney fees. Crabb filed a motion for rehearing and to reconsider, which the court denied.

The Iowa Supreme Court granted Crabb's petition for writ of certiorari, stayed the enforcement of the sanction order, and transferred the case to this court for disposition. Crabb contends the district court (1) did not properly notify him of the "nature and scope" of the sanctions hearing and (2) failed to conduct a "mandatory analysis" for imposing sanctions. Our review of the district court's sanctions order is for an abuse of discretion. *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009).

## II. *Notification of the Hearing*

"[B]efore sanctions are imposed, the alleged offender must be afforded: (1) fair notice and (2) an opportunity to be heard." *K. Carr v. Hovick*, 451 N.W.2d 815, 817-18 (Iowa 1990). Crabb contends he "was caught off-guard and, as

indicated by the transcript, stumb[led] over himself in an effort to present record on issues for which he was not noticed." To the contrary, the order scheduling the sanctions hearing unambiguously stated the hearing pertained to rule 1.413. That rule states, in part:

> Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation. . . . If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee. The signature of a party shall impose a similar obligation on such party.

Iowa R. Civ. P. 1.413(1). By referencing the rule, the court could not have been clearer as to the import of the hearing. Notably, the court afforded Crabb two months to prepare for the hearing. If Crabb was confused about the "nature and scope" of the upcoming hearing, he had ample opportunity to seek clarification. He did not.

At the hearing, the court repeatedly asked Crabb to communicate his version of events, first requesting a "professional statement," then asking him to explain paragraphs ten and thirteen of his application, and finally seeking "some guidance" on why his filing should not result in sanctions. The court stated, "[I]f I am missing something, this is your opportunity, please, to explain to the Court

what I am missing. Maybe you want to take a moment to think about it while [Charity's attorney] speaks."

Crabb had more than a fair "opportunity to appear and argue" regarding the imposition of the sanction. *See K. Carr*, 451 N.W.2d at 818. We find no violation of the obligation to afford Crabb notice and a hearing.

### III. Mandatory Analysis

*Mathias v. Glandon*, 448 N.W.2d 443, 446 (Iowa 1989), exhorts a court to consider "all relevant circumstances" in determining whether an attorney reasonably inquired into the facts and law alleged in a court filing. Included are several factors for consideration. *Mathias*, 448 N.W.2d at 446. Crabb characterizes the factors as part of a "mandatory analysis" that must precede any imposition of sanctions. In fact, neither *Mathias* nor subsequent opinions require a court to address each of the enumerated factors. The court must simply measure compliance with rule 1.413 by an objective standard of reasonableness under the circumstances. *Barnhill*, 765 N.W.2d at 272-73. The court did so here.

The court's meticulous analysis is supported by prior court orders spanning five years, Dowell's actions and admissions, and Crabb's admissions at the sanctions hearing. With respect to the assertions in paragraph ten of the application, all concerned knew Dowell was the subject of a criminal no contact order which had yet to expire at the time Crabb filed his application. A cursory perusal of the record also would have uncovered Dowell's initial ratification of the no contact order and his later unsuccessful attempt to modify the order on the same grounds articulated by Crabb at the sanctions hearing. Because the no contact order was still viable and categorically precluded Dowell from having any

contact with his children, there could be no "wrongful[]" withholding of visitation or contact, as alleged in paragraph ten of Crabb's application for rule to show cause. The paragraph was misleading and supported the imposition of sanctions.

Crabb's reliance on what he characterizes as the complexities of the case is misplaced. The dissolution decree afforded Charity sole custody and physical care of the children, giving her every right to take them to Australia. While the decree was later vacated, Charity did not learn of this fact until she was served with the application for rule to show cause. But, even if she was presumed to have known of the order vacating the decree at an earlier date, the order clarified she had the same rights to the children as she enjoyed before the decree was entered, rights that did not preclude travel to Australia. Significantly, Dowell earlier moved to have the children returned to Iowa and lost the motion. Reasonable inquiry on Crabb's part would have uncovered the motion and ruling and would have confirmed the absence of any "wrongful" withholding, as alleged in paragraph ten.

As for paragraph thirteen, Crabb conceded he did not know for a fact whether the State Department asked the Iowa courts to enter a temporary order finding an unlawful withholding of the children. He nonetheless made the unverified assertion which, with the unsupported denial-of-contact allegation in paragraph ten, prompted authorities to halt Charity's legitimate exit from the country and forced her to incur unanticipated expenses and attorney fees.

We conclude the district court did not abuse its discretion in sanctioning Crabb for the representations in his application for rule to show cause. We uphold the sanctions ruling.

**WRIT ANNULLED.**