# IN THE COURT OF APPEALS OF IOWA

No. 17-1000
Filed July 18, 2018

**IN RE THE MATTER OF THE GUARDIANSHIP OF A.S. and G.S.,**

**ANITA PORTER and ROBERT SLAVISH,**
      Appellants.
_____

      Certiorari to the Iowa District Court for Scott County, Henry W. Latham II, Judge.


      Former guardians appeal from an order of sanctions against them. **WRIT ANNULLED.**


      Ciara L. Vesey of Law Office of Ciara L. Vesey P.L.L.C., Davenport, for appellants.

      Jennifer M. Triner Olsen of Olsen Law Office, Davenport, for appellee.


      Considered by Danilson, C.J., McDonald, J., and Blane, S.J.*

      *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BLANE, Senior Judge.**

Anita Shae Porter and Robert Slavish petition for writ of certiorari[1] from an order of sanctions against them for misleading the court regarding a guardianship over two children. They contend the district court erred in hearing an untimely motion for sanctions, acted beyond its authority and abused its discretion in granting sanctions, and exhibited unlawful bias against them. We find the district court acted within its authority and without any abuse of discretion or evidence of bias, and we affirm the district court order in every respect.

## I.    BACKGROUND FACTS AND PROCEEDINGS

The following facts are supported by substantial evidence in the record[2]: Anita Shae Porter worked as a paralegal for attorney Maria Pauly from 2014 to 2017. Porter's duties included preparing pleadings, answering telephones, and filing documents at Pauly's direction over the Iowa Electronic Document Management System (EDMS). Porter had access to and regularly used Pauly's EDMS login and password to carry out her duties.

---

[1] An appeal from a motion for sanctions generally must be by petition for writ of certiorari. *Barnhill v. Iowa Dist. Ct. for Polk Cty.*, 765 N.W.2d 267, 272 (Iowa 2009). Porter and Slavish filed only a notice of appeal. However, Iowa Rule of Appellate Procedure 6.108 indicates:

> If any case is initiated by a notice of appeal, an application for interlocutory appeal, an application for discretionary review, or a petition for writ of certiorari and the appellate court determines another form of review was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been requested. The court may treat the documents upon which the action was initiated as seeking the proper form of review and, in appropriate cases, may order the parties to file jurisdictional statements.

We treat this appeal as a request for writ of certiorari.

[2] The district court's findings of fact are binding on us, if supported by substantial evidence. *Barnhill*, 765 N.W.2d at 272.

In September 2015, Porter used Pauly's EDMS information to file documents to obtain a guardianship for herself and her ex-husband, Robert Slavish, over the two children[3] of her friend, April Sanders. Sanders consented in writing to a voluntary guardianship. In the order appointing legal guardians, which Porter drafted and proposed and which listed Pauly as her legal representative, the court found, "(April Sanders) is the biological mother of both children. Whereabouts of putative fathers is unknown." The putative father of the two children is Jeffrey Shadden.[4] At the time the guardianship was established, he was living with Sanders in Moline, Illinois. He had occasional contact with Porter and Slavish. Porter and Slavish knew Shadden was a possible father of the children[5] and knew his whereabouts. They neither gave notice of the guardianship to Shadden, as required under Iowa Code section 633.553(2)(b)(1) (2015), nor sought appointment of a guardian ad litem to represent the children, as required under Iowa Code section 633.561(1)(b).

In a January 2017 criminal matter, Shadden appeared in district court before Judge Latham in Scott County. In the course of those proceedings, it emerged that Shadden found out his children were living with Porter and Slavish under a legal guardianship in 2016, but he had not consented to or been served with notice at the time it was created. The court, seeking to determine whether the guardianship was valid, set a hearing in probate for February 14. In its order, the

---

[3] A.S. and G.S.

[4] The record shows Shadden had already established paternity in the case of A.S., but was still in the process of establishing paternity for the younger child, G.S. The case before us does not proceed from a paternity action. This case is about whether Shadden, as a putative father, was given proper notice of a guardianship. The court found he was not. Shadden need not be the established father to have standing here.

[5] The other putative father of the younger child was Slavish.

court issued a summons to the guardians' attorney of record, Pauly, to appear and explain whether Shadden had received proper notice.

The morning after she received the order setting hearing, Pauly went to the courthouse and approached Judge Latham to determine the basis of the summons; admittedly this was outside the presence of Porter, Slavish, Sanders, and Shadden. She looked at the documents in the guardianship court file submitted through EDMS under her name but did not recognize them.[6] The day after the summons, Chief Judge Marlita A. Greve specially assigned the guardianship case to Judge Latham. A few days later, Porter and Slavish filed a motion to dismiss the guardianship.

On February 14, Porter, Slavish, and Shadden appeared for the hearing scheduled by Judge Latham in the guardianship. Porter and Slavish were represented by new counsel. The court terminated the guardianship effective immediately, but requested briefs on whether the court had authority to award attorney fees.

On March 26, Shadden filed a motion for sanctions against Porter and Slavish. At the hearing in May, Pauly testified she was not aware Porter had been appointed a legal guardian to any minor children until she received the January summons from Judge Latham. She recalled some general questions Porter had asked her by text message about guardianships but nothing specific to Sanders, Shadden, or these children. She had not advised Porter on the guardianship and

---

[6] Pauly immediately suspended and, several days later, fired Porter. Pauly also believed Porter intercepted and responded to, as Pauly, any email communications pertinent to the guardianship as Porter also had access to her email accounts.

had not drafted the filings that contained her name. She had no knowledge of the guardianship and had never even represented a party in a guardianship before. She testified, "I don't do guardianships."

Porter and Shadden also testified. Porter initially claimed she did not know who the putative fathers were, but later admitted she knew Shadden might be the children's father. She also testified that, based on the text messages, she believed Pauly was her attorney in the guardianship. Shadden testified although Porter and Slavish let him see his children on a regular basis, they completely controlled his access to them. Shadden had been ordered to complete anger management and domestic violence classes for unrelated criminal charges but Porter falsely told him he could not have custody of his children until he had completed them. Shadden did not challenge Porter believing she had superior legal knowledge as a paralegal.

At the conclusion of the hearing, ruling from the bench, the court stated, "I do not find the testimony of . . . Porter credible whatsoever." Recounting some of Porter's testimony, the court found Porter "made a falsehood upon the court." Specifically, the court pointed to Porter's testimony that she knew Shadden might be the children's father and where he lived but represented to the court that the putative fathers' whereabouts were unknown. The court also pointed to Porter's admission she drafted and filed the documents for the guardianship and submitted them under Pauly's name. After quoting from Iowa Rule of Civil Procedure 1.413, the court imposed sanctions against Porter and Slavish, ordering them to pay $1000 of Shadden's attorney fees.

Porter and Slavish appeal, contending the court (1) should not have entertained Shadden's motion for sanctions because it was untimely, (2) did not

have the authority to grant attorney fees, (3) erred in finding sanctionable conduct occurred, and (4) exhibited personal bias against them. We review a ruling on a motion for sanctions for abuse of discretion. *Barnhill*, 765 N.W.2d at 272. "Although our review is for an abuse of discretion, we will correct erroneous application of the law." *Id.*

## II. ANALYSIS

### A. Timeliness

Porter and Slavish contend the district court should not have considered Shadden's motion for sanctions because it was untimely. At the February 14 hearing, Shadden applied to be awarded attorney fees. At the conclusion of the hearing, the court reserved ruling on the issue until the parties could provide briefing as to whether the court had authority to award attorney fees under Iowa probate code. *See* Iowa Code § 633.673. The court further stated the attorneys could set the matter for further hearing if they believed that was necessary. On the record, the court advised when it wanted the briefs: "Within a month would be fine. There is no need for anything sooner." Porter and Slavish's attorney submitted a brief on March 17. Shadden did not file a brief regarding his application for attorney fees under probate law. Instead, on March 26, Shadden filed a motion for sanctions, citing the Iowa Rules of Civil Procedure.[7]

---

[7] The record is not clear whether Shadden withdrew his earlier application for attorney fees in the termination of the guardianship, or the district court declined to grant them. The later hearing and ruling were on the motion for sanctions; the sanctions took the form of attorney fees, but do not include an attorney fee award contemplated in Iowa probate code under section 633.673, as Porter and Slavish suggest.

Even though the court set a deadline of one month for filing briefs on awarding attorney fees in probate, we find Shadden simply chose not to submit a brief and filed for sanctions instead. There was no specific time limit on this action.[8] It was not untimely and the court properly set it for hearing.

### B. Can the court grant attorney fees as sanctions?

Porter and Slavish contend the district court did not have authority to grant Shadden attorney fees under Iowa probate code. They assert the probate code only permits an award of attorney fees against a losing party who has acted in bad faith, wantonly, or for oppressive reasons. *See* Iowa Code § 633.673; *In re Guardianship of M.D.*, 797 N.W.2d 121, 130 (Iowa Ct. App. 2011).

Shadden clarifies he does not rely upon the Iowa probate code in his motion for sanctions, but upon Iowa Court Rules for the unauthorized practice of law and Iowa Rule of Civil Procedure 1.413(1) regarding signatures on filings. Shadden referred to both in his motion for sanctions, and the court cited the Iowa Rules of Civil Procedure when granting sanctions; it did not cite the probate code. Rule 1.413(1) provides:

> Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact

---

[8] Generally, parties "should request sanctions at the earliest time rule [1.413, the successor rule to] 80(a) violations occur to facilitate judicial economy and effective determination of the issues." *Darrah v. Des Moines Gen. Hosp.*, 436 N.W.2d 53, 55 (Iowa 1989) (citing *Franzen v. Deere & Co.*, 409 N.W.2d 672, 675 (Iowa 1987). *Darrah* recognizes a reasonable exception to this general rule where the action is terminated by a voluntary dismissal rather than a final judgment. *Id.* at 54. The present case also warrants departure from these expectations since the rule violations occurred in September 2015 and were not discovered until considerably later. Shadden and his attorney filed an application for attorney fees on February 8, before the hearing terminating the guardianship, so both the court and the guardians were given notice reasonably promptly. *See id.*

and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation. . . . If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee.

Porter and Slavish did not act with counsel when they signed and filed several pleadings to establish the guardianship.[9] But even pro se litigants can be sanctioned if they run afoul of this rule since, "The signature of a party shall impose a similar obligation on such a party." Iowa R.Civ.P. 1.413(1). *See also Barnhill*, 765 N.W.2d at 273 ("A party or his attorney cannot use ignorance of the law or legal procedure as an excuse"); *Citizens State Bank v. Harden*, 439 N.W.2d 677, 682 (Iowa Ct. App. 1989) (applying Iowa Rule of Civil Procedure 80(a), which was subsequently superseded by Rule 1.413). The rule instructs that when an attorney or party violates the rule, the court "shall" impose an "appropriate" sanction, which may include "a reasonable attorney fee." The court had authority under Rule 1.413 to impose a sanction of attorney fees.

### C. Did Porter and Slavish's conduct warrant sanctions?

Porter and Slavish violated Rule 1.413(1). They filed papers with the court, signed by them, but purporting to be under the representation of attorney Pauly. They stated the whereabouts of the putative fathers were unknown, when they knew both that Shadden was a possible father and where he was residing. Their

---

[9] We, like the district court, give no credit to Porter's asserted belief Pauly was her attorney in this matter.

filings were not "well grounded in fact" and were deliberately filed for the "improper purpose" of depriving Shadden of care and control of his children. Their subsequent conduct in denying Shadden time with the children based on false pretenses amply demonstrates their improper purpose.

The district court considered the motion for sanctions and the accompanying affidavit claiming over $2000 in attorney fees. It determined the amount requested was not reasonable and included some fees for the attorney's representation in Shadden's paternity proceedings, which were extraneous to the guardianship proceedings. The court awarded the reasonable amount of $1000. Porter and Slavish have not shown any abuse of discretion.

### D. Did the court exhibit personal bias?

Porter and Slavish contend the court's decision was influenced by personal bias and animosity toward them. They question Judge Latham's assignment to the case. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including . . . [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." Iowa Ct.R. 51:2.11. "Only personal bias or prejudice stemming from an extrajudicial source constitutes a disqualifying factor." State v. Millsap, 704 N.W.2d 426, 432 (Iowa 2005).

The court expressed appropriate shock and dismay at Porter and Slavish's conduct throughout the proceedings and made appropriate credibility findings regarding Porter's testimony. We find no evidence of a personal bias or any inappropriate conduct on the court's part prior to or after the hearing on sanctions. The court considered Shadden's statements in his criminal proceeding as alerting

it to possible impropriety in a guardianship proceeding and set the matter for hearing. We cannot conclude this constitutes an "extrajudicial source" of personal bias or prejudice. Further, nothing inappropriate has been shown regarding Judge Latham's assignment to the case. He was the judge who first became aware of the dubious background of the guardianship. But nothing in the record shows Chief Judge Greve appointed Judge Latham with any inappropriate purpose or effect.

Porter and Slavish contend Judge Latham engaged in off-the-record ex parte communication with attorney Pauly. First, she was purportedly *their* attorney and the only attorney appearing in the case—Porter and Slavish were not, according to their own account, excluded from the discussion. Shadden does not raise any issue about being left out of the off-the-record discussion.

Second, the court held a hearing, and Pauly testified as to her entire knowledge of the case including the substance of the off-the-record discussion she had with Judge Latham when she first became aware of the filings in her name. The record shows the only discussion held was that Judge Latham showed Pauly the file and asked her questions about the guardianship. Pauly was then able to determine Porter named her as the attorney of record in the case. Furthermore, Porter and Slavish had their opportunity to respond at the hearing. *See* Iowa Ct.R. 51:2.9(B) ("If a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.")

Third, the rule on ex parte communications applies to lawyers acting in adversary proceedings: in an adversary proceeding, "[a] lawyer shall not . . . seek to influence a judge . . . or other official by means prohibited by law . . . [or] communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order." Iowa Ct.R. 32:3.5; *see also Iowa Supreme Ct. Bd. Of Professional Ethics and Conduct v. Rauch*, 650 N.W.2d 574, 577 (Iowa 2002) (discussing an attorney's ex parte communication under predecessor Iowa Rule of Professional Conduct 7-110(B). Pauly was not an attorney in this context[10], and the guardianship matter was not an adversary proceeding. Porter and Slavish have not shown any evidence of court bias or inappropriate ex parte communication.

### E. Costs and Fees

Shadden requests appellate attorney fees.[11] An award of appellate attorney fees is within our discretion. We consider whether the party making the request was obligated to defend against the appeal. *In re Guardianship of G.G.*, 799 N.W.2d 549, 554 (Iowa Ct. App. 2011). We deny Shadden's request for appellate attorney fees. Porter and Slavish are to pay the costs of the appeal.

**WRIT ANNULLED.**

---

[10] We note that attorney Pauly filed an application to withdraw as counsel for Porter and Slavish in the guardianship matter after it came to her attention that she was listed in the court docket as their attorney of record. Pauly stated in her application that she was not attorney of record as she had not filed an appearance and documents "filed in the above captioned matter were filed without the undersigned's [Pauly's] knowledge and/or consent."

[11] Due to the unusual facts of this case, we issued an order allowing appellees ten days to submit an affidavit supporting the claim for appellate attorney fees and appellants ten days to file objections to the affidavit. Appellee failed to timely file the affidavit and did not file any request to allow a late filing. Appellants moved to strike the appellee's affidavit. We deny the motion to strike.