# In the Iowa Supreme Court

No. 23–0054

Submitted October 10, 2024—Filed November 8, 2024

**Dupaco Community Credit Union,**

Plaintiff,

vs.

**Iowa District Court for Linn County,**

Defendant.

On review from the Iowa Court of Appeals.

Certiorari to the Iowa District Court for Linn County, Valerie L. Clay, judge.

A credit union and its counsel seek further review of a court of appeals decision declining to disturb the sanctions imposed by the district court for violations of Iowa Rule of Civil Procedure 1.413(1). **Decision of Court of Appeals Vacated; Writ Sustained, Sanctions Vacated, and Case Remanded.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Peter Arling (argued) and McKenzie R. Blau of O'Connor & Thomas, P.C., Dubuque, for appellant.

Scott A. Shoemaker (argued) of Scott Shoemaker and Associates, P.L.C., Cedar Rapids, for appellee.

**Mansfield, Justice.**

### I. Introduction.

Iowa attorneys owe a responsibility to "maintain a high degree of professionalism in the practice of law." *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 273 (Iowa 2009). In furtherance of this goal, the general assembly and the supreme court have adopted parallel provisions in Iowa Rule of Civil Procedure 1.413(1) and Iowa Code section 619.19. They affirm that a person's signature on a motion, pleading, or other paper filed with the court is a "certificate" that the person has read the item, that it is grounded in fact and law to the best of the person's knowledge after a reasonable inquiry, and that it is not interposed for an improper purpose. Iowa R. Civ. P. 1.413(1); Iowa Code § 619.19(2) (2022). If an item "is signed in violation" of any of these requirements, the court "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction." Iowa R. Civ. P. 1.413(1); *see* Iowa Code § 619.19(4).

The controversy at hand arose when a credit union filed a claim in the probate of an estate, alleging that the decedent owed money on a car loan. The estate responded by mailing a notice of disallowance by certified mail to the individual who had signed the notice of claim on behalf of the credit union. The mailing included the credit union's post office box, while omitting the name of the credit union. One month later, the estate filed an affidavit of mailing the notice with the probate court. Later, the credit union checked on its claim in probate and realized it had no record of receiving the notice. The credit union requested a hearing, and the estate filed a resistance stating the claim was now time-barred because the credit union had not filed a request for a hearing within twenty days of the mailing of the notice of disallowance. *See* Iowa Code § 633.442.

The credit union conducted an internal investigation. The investigation revealed that no one in the relevant department of the credit union had received the notice, that the notice had not been misdirected to another department, and that the credit union had not had a prior problem with receiving notices. The investigation also revealed that the person who signed for the notice was not an employee of the credit union and that the supervisor in the credit union's mailroom was under the impression he worked for the post office.

On that basis, the credit union employee who had submitted the claim executed an affidavit. Her affidavit stated that the credit union never received the notice, that the individual who signed for the notice was not an agent, employee, or representative of the credit union, and that, "[t]o the best of [her] knowledge," he was "an agent of the United States Postal Service." This affidavit was attached to a reply brief signed by the credit union's counsel, which summarized the affidavit. The reply brief also included an incorrect assertion, based on a misreading of the United States Postal Service (USPS) record filed by the estate, that the notice of disallowance had not been sent by *certified* mail. A different attorney for the credit union made similar oral representations at an initial hearing.

Prior to the scheduled evidentiary hearing, the estate filed an affidavit from the individual who had signed for the certified mailing that contained the notice of disallowance. This individual stated that he did not work for the post office but operated a delivery service and that the credit union was one of his clients. After seeing this affidavit, the credit union dismissed its claim against the estate. But the estate pursued sanctions under rule 1.413(1) and Iowa Code section 619.19. The district court awarded sanctions against the client and both attorneys. On certiorari review, the court of appeals upheld the award.

On further review, we now conclude that the district court abused its discretion in awarding sanctions because there was no violation of either rule 1.413(1) or section 619.19. The district court—and the court of appeals which affirmed it—focused their analysis to a large degree on perceived delays by the credit union and its counsel in *catching and correcting* the prior erroneous statements in their reply and affidavit. But rule 1.413(1) and section 619.19 turn exclusively on the circumstances when the papers were signed and filed. When we examine that time period, we find that the credit union and its counsel performed a reasonable, if flawed, investigation. Therefore, on further review, we now sustain the writ of certiorari, vacate the award of sanctions, and remand.

## II. Facts and Procedural History.

**A. The Vehicle Loan.** In 2017, Connie Trout entered into a vehicle loan with Dupaco Community Credit Union (Dupaco). Three years later, Connie refinanced the loan with Dupaco. Connie executed at that time a new loan and security agreement. Around that time, by mistake, Dupaco released its lien on the title to the vehicle with the Iowa Department of Transportation, as if the loan had been paid off. But there was no dispute that the loan itself had not been paid off; it had been refinanced. Connie continued to make regular monthly payments to Dupaco until shortly before she passed away in June 2021.

**B. Dupaco's Claim and the Notice of Disallowance.** Connie died intestate. Probate proceedings were commenced in the Linn County District Court, and Connor Trout, her son, was appointed administrator. Seeking to collect the remaining debt of $11,593.17 on Connie's vehicle loan, Amy Manning, an employee of Dupaco, submitted a claim in probate on Dupaco's behalf on November 3, 2021. The claim was in Dupaco's name and included a copy of the 2020 loan and security agreement. On March 4, 2022, the administrator sent a

notice of disallowance of claim via first class and certified mail to Manning at the post office box listed on Dupaco's claim, omitting the company name "Dupaco." *See* Iowa Code § 633.439–40.[1] Almost a month later, on April 1, the administrator filed an affidavit of mailing with the court. *See id.* § 633.441 (stating that proof of service of the notice of disallowance "shall be made by affidavit, shall show the date and place of mailing, and shall be filed with the clerk").

Dupaco asserted (and continues to assert) that it never received the notice.

**C. Dupaco Contests the Notice of Disallowance.** According to Dupaco, it was unaware of the notice of disallowance until about May 10, when Connor attempted to use the same vehicle as collateral for another Dupaco loan. Connor told someone at Dupaco that as a result of Dupaco having failed to respond to the twenty-day notice, its claim was now disallowed. Word got to Manning, who checked the Iowa Courts Online website. She learned that Dupaco's probate claim appeared to have been disallowed by the estate and that more than twenty days had lapsed. *See* Iowa Code § 633.442 (stating that a claim is barred unless a hearing is requested within twenty days after the date of mailing the notice of disallowance). Yet Manning had no internal record of the notice of disallowance. Manning then attempted to contact the administrator's attorney, Scott Shoemaker, but received no response. At this point, Manning contacted Dupaco's attorneys, McKenzie Blau and Thomas Bright, who on May 13, filed a request for hearing stating that Dupaco's claim was not barred under Iowa Code section 633.442 because "no Notice of Disallowance of Claim was sent to

---

[1]The administrator did not disclose on what basis he disputed the claim, at least as an unsecured claim. A subsequent hearing brief filed by the administrator's attorney said that the claim was disputed for "various reasons" but did not indicate what those reasons were.

Claimant by the Personal Administrator in compliance with Iowa Code § 633.439."

**D. The Court Sets the Initial Hearing.** Later that same day, the administrator filed a resistance to the request. The resistance included a certified mailing receipt signed by a "Ron LeConte" (although the receipt did not indicate a date of delivery). The resistance also included USPS tracking information indicating the mailing had been picked up at the post office in Dubuque, the city where Dupaco's office was located.

On May 25, the court ordered Dupaco to file a reply to the administrator's resistance by June 2. The court's order stated,

> Therefore, Dupaco Community Credit Union is ordered to file a reply to the Executor's Resistance, with the reply to be filed prior to 4:30 p.m. on June 2, 2022. The matter then will be resubmitted to the Court for entry of further orders. Failure of Dupaco Community Credit Union to file a reply may result in the Court denying the Request for Hearing for the reasons stated in the Resistance thereto.

**E. Dupaco Files a Reply Brief and an Affidavit.** Faced with a one-week deadline, Manning continued her investigation. Manning had been an employee of Dupaco for seven years and oversaw legal claims in probate and bankruptcy. Manning could find no internal record of Dupaco's having received a mailing from the administrator. As part of her regular job, Manning filed fifteen to twenty claims a month against estates. To her recollection, this was the only instance where Dupaco had no internal record of receiving a notice of disallowance that had been mailed to it.

Further, Manning did not recognize Ron LeConte's name and did not believe she had seen it before; she could not find his name on any prior certified mailing to Dupaco that she checked. Manning then searched two different databases to determine if LeConte was an employee of Dupaco and determined

he was not. Next, Manning explored the general mail processes used by Dupaco, including mail transfer between branches and the steps taken when legal-related mail was sent to the wrong branch. Satisfied that the processes were intact and functioning, Manning moved on and interviewed Abby Kramer, the head associate in the mailroom of the Dupaco branch where all mail is sorted. Kramer discussed the mailing system and confirmed she also had no evidence that LeConte was an employee. She told Manning that it was "her assumption he worked for the post office" because she had seen him occasionally drop off mail at her branch. Manning did not try to contact LeConte or verify his employment with the postal service.

Dupaco's counsel, McKenzie Blau, reviewed and analyzed the two pages of USPS tracking information that had been filed by the administrator's counsel. In doing so, she made an error. She concluded that the tracking number on the second page was supposed to be the tracking number for the certified mailing to Dupaco. Upon checking the USPS website, she then learned that this tracking number was for a first-class mailing. Therefore, she determined incorrectly that an irregularity had occurred and that the notice had not been sent via certified mail. In reality, the tracking number was for the return receipt going back to the administrator's counsel—not for the notice itself—and Blau did not realize her error until later.

Blau filed Dupaco's reply brief on June 1, a day before the court's deadline. The filing included an affidavit from Manning stating that (1) neither she nor anyone acting on her or Dupaco's behalf had received the notice of disallowance and (2) LeConte was "not an agent, employee, or representative of Dupaco" and "[t]o the best of [her] knowledge," he was "an agent of the United States Postal Service." Blau's reply brief essentially repeated Manning's statements, stating

that "[u]pon information and belief," LeConte was an agent of the USPS. Additionally, because of Blau's misreading of the tracking numbers, she claimed that the notice of disallowance had actually been sent to Cedar Rapids via first-class mail, rather than to Dubuque via certified mail. She showed her work, including the printout from the USPS website displaying the tracking number she had mistakenly entered.

Blau also explained the underlying basis for Dupaco's claim and noted that no defense to the merits of the claim had been offered by the administrator.

**F. The Initial Hearing.** The court held an initial in-person hearing at the Linn County Courthouse on July 1. Present were the administrator; the administrator's attorney, Scott Shoemaker; and attorney Thomas Bright for Dupaco. Over Shoemaker's objection, Manning had been given leave to participate remotely because she was in the advanced stage of a pregnancy. As it turned out, Manning did not participate in that hearing at all because she had gone on pregnancy leave that day. She ended up giving birth on July 3 and was then hospitalized with post-birth complications.

At the hearing, Bright advanced the arguments set forth in the June 1 reply brief, including that the notice of disallowance had not been received by Dupaco, that it had not been sent by certified mail, and that Ron LeConte was not an employee of the lender (and instead must work for the postal service). In opposition, Shoemaker maintained that the mailing had been sent properly, that LeConte was a courier under contract to retrieve mail for Dupaco who is "well-known by the employees . . . at the Dubuque Post Office to fulfill that role," and that in any event the law did not require the notice to have been received by Dupaco. The court scheduled an evidentiary hearing for August 19, later postponed to August 31, to resolve the outstanding factual disputes.

**G. The Administrator's Briefing for the Evidentiary Hearing.** On August 15, the administrator filed a hearing brief on disallowance of Dupaco's claim. The brief elaborated in detail that the notice of disallowance had been sent by certified mail to the proper person (Manning) at the proper address (the one given in the claim itself). The brief also argued that it was irrelevant whether the notice reached Dupaco or not, citing the dissenting opinion in *Escher v. Morrison*, 278 N.W.2d 9, 11 (Iowa 1979) (McCormick, J., dissenting), and our 1891 decision in *Ross v. Hawkeye Ins. Co.*, 50 N.W. 47 (Iowa 1891), noted in that dissent.

On August 24, the administrator supplemented this filing with an affidavit from LeConte. In the affidavit, LeConte stated that he owned and operated a delivery service known as "Swift Delivery," that Dupaco was one of his clients, and that he was authorized by Dupaco to pick up mail, including certified mail. He identified his signature on the return receipt as appearing to be his. Although he did not make any particular statement in regard to this particular delivery, he said that he normally delivered Dupaco's mail to a bin "in the vestibule of their office building."

**H. Dupaco's Renewed Investigation.** Meanwhile, Julie Hoffmann, another employee in Manning's area, began an investigation to get up to speed for the hearing. She retraced Manning's investigation of general mail processes and verified their functionality. She too confirmed there was no reference to or mention of LeConte in Dupaco's internal records. Next, Hoffmann reconnoitered with the lead associate in the mailroom to verify her earlier statements. After retracing Manning's investigation and getting the same results, Hoffmann sought assistance from Deb Digman, an executive secretary to Dupaco's leadership team, in hopes of utilizing Digman's "vast institutional knowledge." Digman's

own investigation revealed that Dupaco did indeed have an oral contract with "Swift Delivery" for mail delivery. This second investigation took one day.

Two days later, on August 26, Dupaco dismissed its claim against the estate. The motion for dismissal described the underlying facts, the steps taken before requesting the first hearing, the investigatory steps that were taken after the first hearing, and the ultimate conclusion. In the motion, Dupaco's counsel stated, "While Dupaco was truly mistaken about its relationship with Ron LeConte, it still maintains it did not receive the Notice of Disallowance of Claim. However, Dupaco now concedes that the evidence shows that the Notice of Disallowance of Claim was mailed to Dupaco via certified mail on March 4, 2022." As a result of the dismissal, the August 31 evidentiary hearing never took place.

**I. The Administrator's Motion for Sanctions.** On August 31, the administrator responded to the dismissal with a motion for sanctions against Blau, Bright, and Dupaco seeking $24,351.45 in fees, costs, and expenses. The administrator claimed Dupaco and its attorneys "failed to perform even the most rudimentary investigation into the facts on their claim" and "intentionally presented facts to the Court which had no basis in truth or were presented for the sole purpose of misleading or confusing the Court." The $24,351.45 amount was based on the time and expense Shoemaker claimed to have spent between May and August 2022 responding to Dupaco's contentions about the administrator's notice of disallowance. Shoemaker presented time records showing that he had performed 68.2 hours of work at a rate of $350 per hour. Much of that time—34.5 hours' worth—was devoted to unspecified "research." Blau, Bright, and Dupaco resisted the motion, and the court held an evidentiary hearing on November 3.

**J. The District Court's Sanctions Order.** Two months later, the district court entered a sixteen-page ruling awarding sanctions against Dupaco and both attorneys. The court reduced Shoemaker's fees to $14,000, an amount it considered reasonable. It then ordered Dupaco to pay half of this figure—$7,000—plus costs and Blau and Bright's law firm to pay the other half—with $5,000 apportioned to Blau and $2,000 to Bright.

Regarding Dupaco's initial request for a hearing on May 13, the district court concluded that sanctions were not warranted. It emphasized that Shoemaker waited almost a month between mailing the notice of disallowance and filing it with the court. It also noted that Shoemaker failed to return Manning's call when she attempted to reach him to discuss the matter. All this meant that Dupaco and its attorneys "had cause for doubt." Thus, they "did have a reasonable belief, when filing the Request for Hearing, that the Administrator failed to properly send Notice of Disallowance as required by [Iowa Code] § 633.439."

However, the district court concluded that "Dupaco's June 1, 2022 filing in this case, which its attorneys steadfastly defended until after . . . Dupaco finally conducted a reasonable inquiry into the facts on or about August 24, 2022," violated rule 1.413 and did require sanctions. In the words of the district court: "The Court takes no issue with the steps Manning took in her inquiry into [LeConte's] identity, but it *does* take issue with her decision to stop her inquiry when she did." The court determined that its one-week deadline was sufficient time for a more thorough investigation that would have uncovered LeConte's true role. The court also took issue with Blau's representations regarding the USPS tracking information. Notably, the court "assum[ed] she just made a mistake and did not intentionally misrepresent the facts," but the error "did cause confusion

and waste of time." Further, the court observed that "Dupaco's attorneys apparently conducted no additional research between the June 1 filing and the July 1 hearing." The court indicated that sanctions would achieve a deterrent effect.

Dupaco, Blau, and Bright petitioned for a writ of certiorari. We granted the writ and transferred the case to the court of appeals, which declined to disturb the sanctions imposed and annulled the writ. Dupaco, Bright, and Blau filed an application for further review, which we granted.

**III. Standard of Review.**

We review a district court's decision on whether to impose sanctions for an abuse of discretion. *Barnhill*, 765 N.W.2d at 272. Under this standard, "we will correct erroneous application of the law." *Id.* The findings of fact by the district court are binding if they are supported by substantial evidence. *See id.* However, an abuse of discretion occurs "when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Schettler v. Iowa Dist. Ct.*, 509 N.W.2d 459, 464 (Iowa 1993). "An erroneous application of the law is clearly untenable." *Rowedder v. Anderson*, 814 N.W.2d 585, 589 (Iowa 2012). Thus, "[w]hen we review for an abuse of discretion, we will correct an erroneous application of the law." *Id.*; *see also In re Est. of Bisignano*, 991 N.W.2d 135, 142 (Iowa 2023) ("We thus review a district court's decision regarding the imposition of sanctions under rule 1.413 for abuse of discretion and, on review, will correct erroneous applications of the law.").

**IV. Legal Analysis.**

**A. Overview of the Law.** Rule 1.413(1) provides in part,

> Counsel's signature to every motion, pleading, or other paper shall
> be deemed a certificate that: counsel has read the motion, pleading,
> or other paper; that to the best of counsel's knowledge, information,

and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation . . . . If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee. The signature of a party shall impose a similar obligation on such party . . . .

Iowa R. Civ. P. 1.413(1). "Iowa Code section 619.19 is identical in substance." *Barnhill*, 765 N.W.2d at 272.[2]

As we explained recently, "We consider a variety of factors in evaluating compliance with the rule, including the time available to investigate and research facts, the complexity of factual and legal issues, the clarity or ambiguity of existing law, and the plausibility of the legal positions asserted." *Est. of Bisignano*, 991 N.W.2d at 142. "Compliance with the rule is based on 'an objective, not subjective, standard of reasonableness under the circumstances.' " *Id.* (quoting *Barnhill*, 765 N.W.2d at 272). "Arguments 'made in good faith' weigh against a sanction." *Id.* (quoting *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 710 (Iowa 2020)).

"The primary purpose of sanctions under rule 1.413(1) is to deter frivolous litigation, not to compensate the winning side." *Id.* We have cautioned "that large monetary sanctions may discourage advocacy and lead to additional rounds of litigation to recover attorney's fees." *First Am. Bank v. Fobian Farms, Inc.*, 906 N.W.2d 736, 751 (Iowa 2018); *see also* Mark S. Cady, *Curbing Litigation*

---

[2]It is not clear to us whether the district court awarded sanctions only under rule 1.413(1) or under section 619.19 as well. Since it doesn't affect the analysis, we will hereafter discuss rule 1.413(1) only.

*Abuse and Misuse: A Judicial Approach*, 36 Drake L. Rev. 483, 505 (1987) [hereinafter Cady] ("One fear that has been raised over the expanding use of rule 11 as a combatant of frivolous lawsuits is that the resulting claims for sanctions would evolve into protracted and costly satellite litigation.").

We have noted that rule 1.413(1) imposes three separate requirements on the signing party, having described them as "reading, inquiry, and purpose elements." *Barnhill*, 765 N.W.2d at 272 (quoting *Weigel v. Weigel*, 467 N.W.2d 277, 280 (Iowa 1991)). Concisely, this means that by signing the pleading, counsel signifies "(1) that he has read the petition, (2) that he has concluded after reasonable inquiry into the facts and law that there is adequate support for the filing, and (3) that he is acting without any improper motive." *Weigel*, 467 N.W.2d at 280. When considering the inquiry requirement, we have spoken favorably of the factors set forth in a monograph on Federal Rule of Civil Procedure 11 prepared by the Litigation Section of the American Bar Association:

> (a) the amount of time available to the signer to investigate the facts and research and analyze the relevant legal issues; (b) the complexity of the factual and legal issues in question; (c) the extent to which pre-signing investigation was feasible; (d) the extent to which pertinent facts were in the possession of the opponent or third parties or otherwise not readily available to the signer; (e) the clarity or ambiguity of existing law; (f) the plausibility of the legal positions asserted; (g) the knowledge of the signer; (h) whether the signer is an attorney or pro se litigant; (i) the extent to which counsel relied upon his or her client for the facts underlying the pleading, motion, or other paper; (j) the extent to which counsel had to rely upon his or her client for facts underlying the pleading, motion, or other paper; and (k) the resources available to devote to the inquiries.

*Barnhill*, 765 N.W.2d at 273; *see also Retterath*, 938 N.W.2d at 710 (quoting these same factors).

Also, as the rule's text makes clear, "Compliance with the rule is determined as of the time the paper is filed." *Barnhill*, 765 N.W.2d at 272. "In

determining whether a pleading is sanctionable, we must look at the state of the facts at the time the party filed the pleading." *Everly v. Knoxville Comm. Sch. Dist.*, 774 N.W.2d 488, 493 (Iowa 2009). "The district court must view the reasonableness of the signer-attorney's judgment 'as of the time the paper in question was filed, not with hindsight gained through hearing the evidence at trial.' " *Schettler*, 509 N.W.2d at 466 (quoting *Weigel*, 467 N.W.2d at 280).

The case of *Mathias v. Glandon* illustrates this point. 448 N.W.2d 443 (Iowa 1989) (en banc). In *Mathias*, a car crash victim brought a personal injury suit after the statute of limitations had passed. *Id.* at 443–44. Her attorney filed the suit based on his client's statements that she suffered from and had been treated for seizures, reasoning those injuries might toll the statute under the Iowa Code section 614.8(1) definition of mental illness. *Id.* at 446. Four months later, the attorney dismissed the suit after apparently learning that the facts of her injuries did not support that theory. *Id.* at 444. The defendants filed for sanctions, asserting the claim that the plaintiff suffered from mental illness was neither true nor based on a belief formed after reasonable inquiry. *Id.*

On appeal, we affirmed the district court's decision to deny sanctions. *Id.* at 447. We noted that at the time of the filing, the plaintiff's attorney was under considerable time pressure: "[C]ounsel was contacted by the client 'almost literally within hours' of the earliest time for the calculating of the running of the statute of limitations." *Id.* at 446. Under the circumstances, we agreed with the district court that it was reasonable for counsel to rely on his client's factual assertions about the extent of her injuries. *Id.* at 446–47.

We also held that counsel could not be sanctioned under section 619.19 for prolonging the litigation subsequent to the filing because "the plain meaning

of the language of the rule and statute clearly expresses an intent that the court evaluate the signer's conduct at the time of signing the pleading, motion, or other paper." *Id.* at 447. We noted that while "[o]ther sanctions are available to address abusive tactics not related to the signing of pleadings, motions, and other papers," Iowa Code section 619.19 does not extend that far. *Id.*[3]

**B. Sanctions Against Dupaco.** We begin by considering the sanctions against Dupaco. Rule 1.413(1) authorizes judges to impose sanctions on "the person who signed [the filing], a represented party, or both." Iowa R. Civ. P. 1.413(1). Still, we have recognized that "sanction rules such as rule 80(*a*) [(now rule 1.413(1))] are aimed primarily at attorney conduct." *Weigel*, 467 N.W.2d at 282. Rule 1.413(1) speaks in terms of "counsel's" obligations. *See* Iowa R. Civ. P. 1.413(1).

Yet when *a party* signs a paper that is filed with the court, rule 1.413(1) provides, "The signature of a party shall impose a similar obligation on such party." Here, Dupaco submitted Manning's signed affidavit on June 1. In doing so, it certified that the affidavit was based on a "reasonable inquiry." It was the lack of such an inquiry that, in the district court's view, justified an award of sanctions against Dupaco.

The court sanctioned Dupaco for one thing: the paragraph of Manning's affidavit wherein she said, "Ron LeConte is not an agent, employee, or

---

[3]It should be noted that Federal Rule of Civil Procedure 11 was amended in 1993 to prohibit "later advocating" the position in a pleading, motion, or paper after it is no longer tenable. Sup. Ct. of the U.S., *Amendments to the Federal Rules of Civil Procedures and Forms* (Apr. 22, 1993), *reprinted in* West Group, *West's Federal Rules Decisions*, 146 F.R.D. 401, 420 (1993). In addition, the federal rule was amended to make sanctions discretionary and to require a party filing a motion for sanctions to give the offending party a twenty-one-day notice and an opportunity to withdraw the offending pleading, motion, or paper. *See id.* at 421. For these and other reasons, Iowa's rule now diverges substantially from the federal rule.

representative of Dupaco. To the best of my knowledge, Ron LeConte is an agent of the United States Postal Service." The court reasoned as follows,

> The Court takes no issue with the steps Manning took in her inquiry into [LeConte's] identity, but it *does* take issue with her decision to stop her inquiry when she did. Manning's belief that [LeConte] was a post office employee was based off of, essentially, secondhand assumptions of a mailroom employee. Manning made no additional effort—such as contacting the post office or trying to track down [LeConte] himself—to confirm this. Given the complete lack of proof, the Court simply does not find the assumption that a postal employee would sign for (accept) certified mail on behalf of a postal customer to be plausible.

Manning's investigation was limited by several factors. Manning was in the third trimester of her pregnancy and her one-week timeline to investigate straddled the Memorial Day weekend. Although the court's sanctions order said that "a reasonable attorney would have simply asked the Court for an extension of time to conduct further inquiry," Manning wasn't an attorney, and the reasonableness of the client inquiry should be considered in the context of the existing timeframe. That is especially true given that the court had specifically ordered Dupaco to file its reply "prior to 4:30 p.m. on June 2, 2022." The court's order further advised that "[f]ailure . . . to file a reply may result in the Court denying the Request for Hearing for the reasons stated in the Resistance thereto."

Manning's investigation into the mailing receipt was also hampered by LeConte's failure to indicate the "status of signer" or the "date of delivery" when he picked up the notice. And LeConte's status was not all that easy to uncover. His company had an oral contract with Dupaco to pick up mail. After retrieving the mail, he regularly dropped it off in the vestibule at the front of the Dupaco building, something a postal service worker might normally do.

Manning first verified that there was no record at Dupaco of the notice having been received. She searched through the company intranet and phone

registry to check if LeConte was employed by Dupaco and could not find him. She spoke with the supervisor in the mailroom and was told LeConte didn't work for Dupaco. The supervisor remembered that he occasionally dropped off mail and her assumption was that he worked for the post office. Thus, when Manning executed the affidavit, she believed in good faith that LeConte worked on behalf of the post office.

It is also important to recognize that this filing was not going to resolve whether Dupaco's claim should be allowed or disallowed. It was part of a request for a hearing at which that issue would be addressed. We agree with the district court that with hindsight Manning could have done more. When Hoffmann redid the investigation, she performed the same steps and got the same results until she thought of going to a longtime employee and tapping "her vast institutional knowledge." But given the circumstances, Manning's multi-step, good-faith inquiry was clearly enough for rule 1.413(1) purposes. We hold that the district court abused its discretion in concluding otherwise. It is noteworthy that the administrator's counsel claims to have spent many hours of time and $300 worth of investigator fees tracking down LeConte and disproving Dupaco's claims about him. Clearly, Dupaco was in a better position to uncover the facts, but this does not demonstrate that the true facts were immediately apparent.

The district court's ruling also indicated that "Dupaco and its attorneys certainly should have conducted the inquiry [into whether LeConte worked for the postal service] *before the July 1 hearing.*" (Emphasis added.) But rule 1.413(1) limits our analysis to the state of affairs on June 1, when the reply was filed. *Everly,* 774 N.W.2d at 493; *Barnhill,* 765 N.W.2d at 273. We recognize that the district court wrote in a footnote that its decision was "based upon the reasonableness of Dupaco and its attorneys' actions *at the time of the filings,* not

based upon knowledge gained in hindsight." Yet the main text of the court's ruling belies this statement.

Affidavits that contain incorrect factual statements surface frequently in litigation. One can often say that the affiant could have investigated more. Evidentiary hearings exist to resolve those disputes. Here, Manning signed her affidavit believing that it was true, there was no improper purpose, and she contacted multiple individuals and departments to gather facts before submitting it. Her investigation was objectively reasonable under the circumstances. We therefore vacate the award of sanctions against Dupaco.

**C. Sanctions Against Bright.** Bright did not sign the June 1 reply brief. Rule 1.413(1) is directed at attorney *signers* of pleadings, motions, and other papers. *See Schettler*, 509 N.W.2d at 465. While Bright handled the July 1 hearing at which he restated some of the points from the June 1 reply brief, such conduct is not within the scope of rule 1.413(1). In its sanctions order, the district court stated, "[N]o reasonably competent attorney would fail to conduct any further inquiry into the facts and circumstances described in their pleadings before showing up for a hearing, as counsel apparently failed to do in this case between June 1 and July 1."

This analysis was based on a legal error. Rule 1.413(1) does not "impose a continuing obligation upon counsel" after the pleading, motion, or paper has been filed. *Mathias*, 448 N.W.2d at 447. Nor is it a tool for addressing verbal misstatements by an attorney at a hearing. We vacate the award of sanctions against Bright.[4]

---

[4]Again, as noted, Federal Rule of Civil Procedure 11 was amended in 1993 to cover oral advocacy of a position in a previously filed pleading, motion, or paper. Sup. Ct. of the U.S., *Amendments to the Federal Rules of Civil Procedures and Forms* (Apr. 22, 1993), *reprinted in* West Group, *West's Federal Rules Decisions*, 146 F.R.D. 401, 420 (1993). Iowa Rule of Civil Procedure 1.413(1) and Iowa Code section 619.19 have not been so amended.

**D. Sanctions Against Blau.** We now turn to the award of sanctions against Blau. We agree with the district court that Blau had a reasonable basis for contesting the basic legal proposition of whether service had been effectuated in compliance with Iowa Code section 633.439. The statute requires notice by certified mail "addressed to the claimant at the address stated in the claim." Iowa Code § 633.439. The claimant was Dupaco, but the address for the notice left out "Dupaco," as if the notice was going to Manning individually. And Manning performed a reasonable investigation to determine that it had not been received within Dupaco.

In addition, the argument that effective service under section 633.439 requires receipt, or at least proper delivery, was not frivolous. *L.F. Noll Inc. v. Eviglo*, cited by the district court, discussed and synthesized a number of Iowa authorities interpreting various statutes that have gone in different directions. 816 N.W.2d 391, 395–97 (Iowa 2012). We are aware of no reported appellate decision specifically interpreting section 633.439's service requirement.

The district court faulted Blau for relying upon and incorporating Manning's sworn statements about LeConte's status in the June 1 reply. In the court's view, "[N]o reasonably competent attorney would have simply taken their client's assertions about mail being intercepted by a postal worker, with no proof to support it, at face value and present it to the Court as fact." But neither Manning nor Blau asserted that anything nefarious was going on, as the foregoing statement might suggest. Instead, Blau used the Manning affidavit to make the following qualified statement: "Upon information and belief, 'Ron LeConte' is an agent of the United States Postal Service. *See* [the Manning affidavit]." We agree with the district court that it is "implausible" that an employee or agent of USPS would sign for and take possession of a certified

mailing, but that was where Manning's investigation stood as of June 1. Several other *more* plausible possibilities had been investigated and ruled out.

We do not agree with the district court that there was "no proof" to support Blau's statements about LeConte's status; the Manning affidavit amounted to *some* proof. Attorneys may present sworn testimony in civil matters even where they may have doubts as to the credibility of the witness. The ethical rules prohibit a lawyer from presenting testimony that they know is false; they permit a lawyer to refrain from presenting testimony that they reasonably believe is false. *See* Iowa R. of Prof'l Conduct. 32:3.3(a)(3). A comment to rule 32:3.3 reminds us that the attorney "is usually not required to have personal knowledge of matters asserted" in litigation documents, which "ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer." *Id.* r. 32:3.3 cmt. 3.

Lastly, we turn to Blau's misstatements based on her misreading of the USPS tracking information, another area where the district court found fault. Blau clearly mistook the tracking number given to the confirmatory return mailing for the tracking number given to the actual notice of disallowance. But, as noted earlier, Blau showed her work. This made the number that she had entered on the USPS website—and therefore the error that she had made—clear on a closer review. After reviewing the tracking documentation ourselves, we can see how Blau confused the two numbers. The district court criticized Blau for not "correct[ing] these errors through any subsequent filing" even after the administrator's August 15 filing thoroughly exposed her mistake, but as noted, that is not an area covered by rule 1.413(1).

Under rule 1.413(1), we consider "the motion, pleading, or other paper." A filing that contains some misstatements of fact or law is not necessarily frivolous

as a whole. *See* Cady, 36 Drake L. Rev. at 496 ("[T]he duty is not breached when merely one argument or sub-argument behind a valid pleading or motion is without merit."). We have reversed an award of sanctions when the pleading, motion, or paper had "some basis in fact." *Retterath*, 938 N.W.2d at 710. Here, too, the June 1 reply brief had some basis in fact. The notice of disallowance had not been received by Dupaco personnel, it was missing the name of the claimant, and as of that date, the best information Manning had based on a series of inquiries was that LeConte didn't work for Dupaco but presumably worked for the postal service. It is also worth noting again that the function of the reply brief was merely to obtain an evidentiary hearing where the facts could be sorted out. We conclude that the award of sanctions against Blau was likewise an abuse of discretion and vacate the award.

**V. Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals, sustain the writ of certiorari, vacate the sanctions imposed by the district court, and remand this case for further proceedings.

**Decision of Court of Appeals Vacated; Writ Sustained, Sanctions Vacated, and Case Remanded.**